*Turner and Goodloe* for appellant: *Robinson & Johnson* for appellee.

---

CHANCERY.

*Case* 46.

## Goodloe *vs* Clay.

APPEAL FROM THE MADISON CIRCUIT.

## Clay *vs* Goodloe.

ERROR TO THE MADISON CIRCUIT.

*Joint sureties. Mortgages. Interest.*

[In 1836 and 1837, Cassius M. Clay and A. W. Goodloe became bound as joint sureties of William Rodes, for the payment of sundry debts. In August, 1837, Rodes made a mortgage to Clay for his indemnity in these and other liabilities. Clay paid off all or a considerable part of the debts for which he was jointly bound as surety with Goodloe, had a foreclosure of the mortgage, and sale of the mortgaged effects, which failing to indemnify him, he filed his bill in this case, against Goodloe, for contribution, which being decreed to him, Goodloe appealed and Clay assigned cross errors.

This brief statement is made to facilitate the understanding of the case, as the opinion was not, when written, designed for publication.        REPORTER.]

*Oct* 20.

JUDGE MARSHALL delivered the opinion of the Court.

The case stated.

ALTHOUGH Clay, as the brother-in-law of Rodes, and having confidence in his willingness and ability to reimburse him, may have looked for that reimbursement from him when he made the payments, without even thinking of the liability of his co-surety to contribute, these circumstances do not discharge or repel that liability. And there being no sufficient ground" for inferring either that these payments were made under any special arrangement with Rodes, or with any intention of releasing the liability of the co-surety, in case of the failure of Rodes

to make satisfactory indemnification, we are of opinion that Goodloe, the co-surety, was liable to contribute to the loss. And as it appears that before any suit could have been brought against the principal after the payments made, he mortgaged to Clay, as an indemnity for this and other payments or liabilities for him, all the property he then owned, Clay had not, up to that time, lost any thing by *laches*—and all that Goodloe could require, if he did not choose to act upon the mortgage himself, as he might have done, was that Clay should deal fairly with the indemnity in his hands, and be responsible for any waste or actual loss permitted by him, or consequent upon his allowing the mortgaged property to remain in the use and possession of Rodes. Upon this branch of the case, we think there is ground to infer that Clay used his mortgage for an unreasonable time for the protection of Rodes in the enjoyment of the property, and that it was done for the indulgence of Rodes and his family, in disregard of the interest of the co-surety. We are, therefore, of opinion that he should account for a rateable portion of the annual value of the mortgaged slaves, (comparing these debts with others secured by the mortgage,) to be estimated from the time when he should have required the possession or the hire, or might, by a timely resort to a Court for foreclosure, have obtained an order for their being hired; say from the 1st day of January, 1838, up to the time of their sale; and that he should be also accountable, rateably, for actual waste or loss of articles consequent upon leaving the possession with Rodes for use and consumption.

The credit for the annual value of the slaves to be applied as it would have fallen due in the ordinary course of hiring, up to the sale, and the other credits at the time of the sale. But these credits for waste or loss, are not to be determined with reference to the prices actually brought at the sale. For the evidence is, that they were generally sold for less than their value, from a disposition that they might remain in the use of Rodes, and that most of them were purchased by his mother-in-law, the mother of Clay. But no unfairness is proved on the part of Clay, and it was Goodloe's business, if he desired the property

*Margin:*

GOODLOE
vs
CLAY.

One of several joint sureties who receives a mortgage of personal property, and who pays the debt, is, in justice to the joint surety, bound to use reasonable diligence in appropriating the security to the re-payment of the money paid out, and responsible for any loss or waste arising from his laches.

GOODLOE
vs
CLAY.

to bring high prices, to attend or procure others to attend the sale and prevent a sacrifice. If all the mortgaged property was sold, or in case of stock which might have been consumed, if the individual articles mortgaged were replaced by others like them which were sold, we do not know of any criterion for ascertaining waste or loss; and it is to be observed that Goodloe might have hastened the sale after the suit was brought, as well as Clay.

The rateable proportion of the proceeds of the sale should have been credited on the amount of Clay's payments on these debts, at the time the sale money became due or bore interest, which does not appear to have been done; and as under the circumstances of Clay's payments of these debts, Goodloe may not have expected to be called on for contribution, we are of opinion that he should not have been charged with interest prior to the commencement of this suit. But as he was then apprised of the demand upon him, and was bound then to contribute, we think interest should be charged from that time.

The law on the subject of interest on simple contract debts, is by long practice, sanctioned by judicial decisions, and to some extent, by legislative enactments, essentially different in this State from what it was in England before our revolution, and perhaps from what it is there even now; although the claim of interest is much more favored there, both by statute and the Courts, than formerly. Here interest is recoverable at the discretion of a jury, and therefore in like case at the discretion of the Chancellor, upon all liquidated demands, and especially on such as grow out of the payment of money; and we see no reason for excepting the case of a demand for contribution, and especially where interest in that case is recoverable by statute in the remedy by motion.

We are not satisfied that there was fraud either in the first mortgage to Clay for the land afterwards included in the mortgage of indemnity, or in the sale under that mortgage. Nor are we satisfied that Goodloe's liability for these debts was intended or understood to be embraced in the transfer made by Rodes to him and another, of certain slaves, &c. in Arkansas; but the contrary may be

*Where property is mortgaged to indemnify a surety in various liabilities, in some of which the mortgagee has joint sureties, there should be a pro rata distribution of the proceeds.*

*A joint surety with one who held a mortgage for his indemnity, under the circumstances of the case, held not liable to pay interest to his co-surety for payments made as such for the principal, but from the time he was sued for contribution.*

*The Chancellor in analogy to the statutory remedy given to a joint surety against his co-surety, will generally decree the payment of interest from the time of the disbursement by the joint surety; and so generally in cases where the demand is liquidated.*

inferred from the fact that Rodes then told them, that he intended, on his return to Kentucky, to make the mortgages to Clay, and from the fact that Clay had then paid these debts, except perhaps the smallest one, and that the parties probably understood he looked to Rodes and would in fact be fully indemnified by him. It does not appear what advantage Goodloe obtained by the subsequent use of his liability to contribute, in the division of the Arkansas indemnity; but it appears that he was far from being prepared by that indemnity for the other payments and liabilities, which alone, as we suppose, were intended to be covered by it. We cannot, therefore, reverse the decree on the cross errors of Clay. Upon the errors assigned by Goodloe with respect to interest, and the responsibility of Clay for the mortgaged property, the decree is reversed and the cause remanded, for an account to be taken, and a final decree therein in conformity with this opinion.

*Goodloe and Caperton* for Goodloe: *Turner* for Clay.