### DYSART, tax-collector, v. BROWN, receiver.

Where it appears that an insolvent corporation whose assets are in the hands of a receiver is already two years in default in the payment of its State and county taxes, and that the taxes for a third year will soon become due, it is the duty of the judge by whom the receiver was appointed, upon a proper application by the tax-collector, to order the receiver, if no other means are available for the purpose, to sell a sufficiency of the property of the corporation to raise the money with which to pay the overdue taxes. That all of the income derived by a receiver from carrying on the business of a corporation whose assets are in his hands is requisite to the operation of that business, is no legal excuse for such long delay in paying its taxes.

Argued December 7,—Decided December 17, 1896.

Intervention. Before Judge Lumpkin. Fulton superior court. March term, 1896.

Under an equitable petition of creditors against the Georgia Mining, Manufacturing & Investment Company, a receiver was appointed for the property of that corporation, consisting, among other things, of leases of the property of the Georgia Iron & Coal Company and the Bartow Iron & Manganese Company, which leases required the lessee to pay all taxes. The two companies last named own large bodies of realty in Bartow county; and the tax-collector of that county, on December 20, 1894, issued executions for their State and county tax of that year. For

1895 the receiver gave in said realty for taxation, and exe-cution issued, December 20, 1895, against the company first named, for its State and county taxes on the property. On May 25, 1896, the tax-collector of Bartow county brought his petition, alleging that the receiver fails, neglects and refuses to pay the amount due on said executions or any part thereof; and praying, that as tax-collector he be allowed to intervene, that the receiver be ordered to pay him the amounts due on the executions within thirty days, and on failure so to do, that leave be granted to have the property levied on and sold by the sheriff of Bartow county to satisfy the executions.

The receiver answered: He has not paid the taxes, be-cause he has not had the money with which to pay them and to keep the works upon the estate committed to him in operation. The court ought not to order him to pay the amounts within thirty days, because he has not the money to do so, and no means of obtaining it except from the in-comes arising from the conduct of the operations of the properties committed to him, all of which is necessary to conduct said operations. He does not believe it would be to the interest of the estate to have the properties levied on and sold by the sheriff; if this were done the properties would be dismembered, and the creditors thereby injured. He believes the best interest of the estate committed to him is, that at the proper time one decree be had, ordering the sale of all the properties and payment of the demands against them in accordance with their legal priorities.

The prayer of the tax-collector was denied, and he ex-cepted.

*J. M. Terrell*, attorney-general, and *Albert S. John-son*, for plaintiff.

*Bishop, Andrews & Hill*, for defendant.

ATKINSON, Justice.

The right to levy and collect taxes for the support of its institutions of government is one of the supreme attributes

of a sovereign power, and this charge upon the property of the citizen is, by the law of this State, made superior to any other encumbrance which may be imposed upon it, either by contract or by law. It is universal in its application, and the mere fact that the property of a corporation may be in the hands of a receiver appointed by a court of equity, affords no exception to the rule, and does not exempt the property of such a corporation from taxation. Property so circumstanced is as much bound to sustain its proportionate share of the burdens of government as any other, and being liable for taxation, there must of necessity be some means for the enforcement of this charge in favor of the State. Under ordinary circumstances, the property of the citizen is subject to seizure upon execution, and to sale, in satisfaction of the charge for taxes, and under the express statute law of this State, there can be no judicial interference with the collection of taxes lawfully assessed. The ordinary processes of the law cannot be stayed in their execution when proceeding for this purpose. A difference has been held to exist where courts of equity, in the exercise of their extraordinary powers, have seized and taken into their custody property to be administered through the hands of receivers for the benefit of all persons, as their interests may appear. Under such circumstances, it has been held that the ordinary executive officers of the State are not authorized to proceed and wrest from the possession of receivers property committed to their custody, even though for the purpose of realizing sums due to the State for taxes. See *In re* Tyler, 149 U. S. 164, and cases there cited.

In the present case, however, we are not called upon to determine how far and to what extent the executive officers of the State are limited in their right to enforce such executions, and, therefore, we do not undertake to say to what extent the rule announced in the case above stated would be followed in its application to property held

by receivers appointed by the courts of this State; but we are now only called upon to consider the propriety of the action of the circuit judge in refusing to compel a receiver appointed by him to provide for the payment of sums due to the State, and the counties of this State, upon account of taxes. It being fundamental that courts, like persons, should pay the charges imposed for taxes upon property in their custody, it is their duty to make such orders as will compel their representatives to discharge this obligation. It is not within the general power of a court of equity, by the appointment of a receiver, to establish a judicial protectorate over the assets of an insolvent person or corporation, and by doing so, indefinitely withdraw the same from appropriation to the payment of taxes lawfully assessed against it. Nor is it a good reply to the demand of the State for payment of taxes due to it, that the net income from the property in the possession of the court is insufficient to meet its current expenses, or that a sale of a part of the property might so dismember it as to put in jeopardy the interests of general creditors. Such a doctrine cannot be allowed. To admit it would be to deny the State access to sources of revenue from which the means for its support could be drawn. The lien of the State for taxes does not rest upon net income alone, but upon all and every part of the property which may be in the hands of the receiver, and therefore, where, as in the present case, application is made to the court by the officers charged with the collection of taxes, for direction to the receiver to pay the same, the court ought either to direct that the receiver sell a part of the property committed to his care, and thus realize a sum sufficient to pay this charge, or it should give such direction to the receiver as would enable him, without the sale, to bring about a like result, and especially is this true where, under management of the receiver, the taxes due the State and counties have been permitted to accumulate and pass unpaid for several years.

A mere temporary postponement of the payment of taxes might not evoke the immediate application of such drastic measures, but we are fully persuaded that, under the facts of the present case, the court did not exercise a sound legal discretion in withholding its power in aid of the appeal made to it on behalf of the State by its executive officers.

*Judgment reversed.*