## CAMPAU *v.* DETROIT DRIVING CLUB.

JUDGMENT CREDITOR'S BILL—INTERVENING CREDITORS—EXECUTION SALE OF PROPERTY IN POSSESSION OF RECEIVER—REDEMPTION.

Complainants obtained two judgments against defendant, and levied on its property under the first, and filed a judgment creditors' bill based upon the second, in which suit one of the complainants was appointed receiver. Shortly after his appointment, the receiver petitioned the court for leave to borrow money to conduct the defendant's business, setting up that he had taken possession of all its property. Four months after his appointment, defendant's property was sold to complainants, without leave of court, under their execution. Another creditor of defendant secured a judgment, and levied upon its property, prior to the appointment of the receiver, but subsequent to complainants' levy. The latter creditor filed an intervening petition in the judgment creditors' suit, asking to have the sale of defendant's property set aside, for the reason that it was sold while in possession of the receiver. *Held :*

(1) That the receiver could not maintain he was not in possession of the property at the time of the sale under the execution levy.

(2) That the intervener's petition was not barred by a prior intervening petition, filed before the execution sale, asking to have the receiver removed and for an accounting.

(3) That the intervening petitioner had a right to redeem from prior sales, under 3 Comp. Laws, § 9185, and, as a redemption from an illegal sale would be unsafe, he had a right to petition to set aside the sale.

(4) That a sale of property on execution, without leave of court, while the property is in possession of a receiver, is a contempt of court, illegal, and void.

130 Mich.—27.

Appeal from Wayne; Frazer, J. Submitted November 12, 1901. (Docket No. 97.) Decided April 25, 1902.

Judgment creditors' bill by Daniel J. Campau, Francis F. Palms, and George M. Vail against the Detroit Driving Club, in which Fred T. Moran and Worthy L. Churchill intervene by petition to set aside certain execution sales. From an order dismissing the petition, petitioners appeal. Reversed.

*Fred A. Baker*, for petitioners.

*Moore & Moore* ( *Otto Kirchner*, of counsel), for complainants.

Long, J. The Detroit Driving Club is a corporation, and in 1899 owned and possessed the race track and grounds in Grosse Pointe, near Detroit, together with a quantity of personal property used in connection with the race track. The real estate was incumbered with a first mortgage of $75,000 and a second mortgage of $60,000. March 30, 1899, the complainants obtained two judgments against the Detroit Driving Club in the circuit court for Wayne county; one of these judgments being for $18,366 and costs, and the other for $10,343.72 and costs. March 31, 1899, executions were issued on these judgments. April 4th, one of these executions was levied on the race track and grounds of the club, and also upon the personal property used in connection with the race track. April 22d, the execution on the other judgment was returned unsatisfied. April 24th, the judgment creditors' bill in this cause was filed. December 7th, Daniel J. Campau was appointed receiver under said judgment creditors' bill of all the property and assets of the Detroit Driving Club. At the time of the appointment of the receiver, no sale had taken place under the execution levy. April 3, 1900, long after the receiver had been appointed and had qualified, the sheriff sold the race track and grounds under the execution levy to Daniel J. Campau, Francis F. Palms,

and George M. Vail for $18,692.47, and the following day he sold the personal property to the same parties for $1,-089, the aggregate amount realized being the amount due upon the judgment, with costs and expenses of sale. The execution was returned satisfied. The execution sale was made without leave of the court, and without any application being made to the court; and one of the purchasers at the execution sale was Daniel J. Campau, the receiver appointed by the court.

April 15, 1899, the People's Savings Bank recovered judgment in the circuit court for the county of Wayne against the Detroit Driving Club for $14,170 and costs. November 16th, execution was issued on said judgment, and on November 23d it was levied upon the race track and grounds of the club in Grosse Pointe. November 29th, said judgment was assigned by the bank to Fred T. Moran and Worthy L. Churchill, the intervening petitioners in this cause. February 6, 1901, the intervening petitioners filed their petition, setting up the fact that the execution sale was made without leave of the court, and praying that it might be declared illegal and void by a decree of the court. They also prayed that the real and personal property of the club might be decreed to be sold free and clear of all liens and incumbrances, and that the proceeds of the sale be paid into court for distribution among the secured and unsecured creditors of the Detroit Driving Club, according to their respective rights and priorities. They also prayed that the liens and incumbrances, of every name and nature, upon said real and personal property, might be ascertained, and the rights and priorities of the several claimants determined.

On the filing of this petition an order to show cause was granted. On the return day of the order to show cause Daniel J. Campau filed an objection and answer. Subsequently a hearing was had before the circuit court of Wayne county. June 27, 1901, an order was entered dismissing the petition. Omitting the formal part, the order of dismissal is as follows:

"1. The court finds that, notwithstanding the appointment of the receiver in this clause, the complainants herein had a legal right to sell the race track and real estate of the Detroit Driving Club on the execution levy made by them thereon before the appointment of said receiver, without obtaining leave from the court to make such execution sale.

"2. The court finds that it was legally competent for the complainants, notwithstanding the fact that said Daniel J. Campau was receiver, to become the purchasers of said property on such execution sale.

"3. It is ordered and decreed that the said second intervening petition be, and the same is hereby, dismissed."

The intervening petitioners appeal from the above order.

Several claims are made by counsel for complainants in the creditors' bill filed why this second intervening petition cannot be maintained.

1. It is said that, after the receiver was appointed, but before he had taken possession of any of the property, it was all sold under said execution levy. It appears that this property was sold April 3, 1900. Mr. Campau was appointed receiver of all the estate, both real and personal, on December 7, 1899. At the time of his appointment he was in possession of this property as the chief executive officer of the corporation. He qualified as receiver, and on the 29th of December, 1899, three months before the execution sales of March 29 and April 3, 1900, he, as receiver, filed a petition in this cause for leave to borrow money and conduct races; and the petition was granted. In that petition he made the following statement:

"He has heretofore been appointed receiver of all the property of the above-named defendant, and he has filed his bond as such receiver, entered upon the duties of his office, and said defendant has assigned to him, as such receiver, all of its property, and he has taken possession of the same."

It appears also in such petition that the property he had taken possession of consisted of the race track and the personal property. The first intervening petition filed in this cause was answered by Mr. Campau, and sworn to, on

the 17th day of March, 1900, about two weeks before the execution sales, in which Mr. Campau states that "he was appointed as receiver, and that he is now in possession of the property and assets of the club as such receiver."

2. It is claimed by complainants' counsel that the charges contained in this second petition (now before us) are substantially the same as those made in the first, the only difference being that in the second petition it is alleged that, between the filing and the hearing of the first petition, the property was sold under complainants' execution. We think this is not according to fact. The first intervening petition was filed for the removal and discharge of Mr. Campau as receiver, and the appointment of a disinterested person in his place; that he (Mr. Campau) be required to give an accounting of his management of the affairs of the club; that the liability of Mr. Campau for neglecting, failing, and refusing to apply the first earnings of the club and its subsequent earnings to the payment and liquidation of said indebtedness to the People's Savings Bank, as he was directed to do by the action and resolution of the board of directors, be ascertained and determined, and the amount thereof be established by a decree of the court, and that a personal judgment or decree be entered against Mr. Campau therefor. The second intervening petition was not filed until February 6, 1901. The only object of this petition is to obtain a decree declaring the execution sales illegal and void because they were made when the property was in the hands of the court by its receiver. Incidental to this relief, the petition prays that direction may be given to the receiver to sell the real and personal property of the corporation free and clear of all liens and incumbrances, and distribution made of the proceeds among the secured and unsecured creditors. This second intervening petition is based upon a fact which occurred after the first petition was filed, viz., the execution sales of March 29 and April 3, 1900. Thus it appears that the only object of the second

intervening petition is to obtain a decree declaring the sales void. The denial of the first petition is no bar to the filing of the second intervening petition.

3. It appears from the record that the execution levy held by the petitioners under the assignment from the People's Savings Bank was subsequent to the one held by the complainants, and it was prior to the appointment of the receiver of the judgment creditors' bill. Under our statutes relative to execution sales, the petitioners had a right to redeem from the prior sale at any time within 15 months from the day the sale was made. Section 9185, 3 Comp. Laws. If the prior sale was illegal and void, the petitioners could not safely redeem from it. The complainants would get their money,—some $19,000,—but the petitioners would not get title to the property; so that it is apparent that the second intervening petitioners are pursuing the only safe course open to them to preserve their rights.

We think counsel for the intervening petitioners is correct in saying that the execution sale, made after the receiver was appointed, was made in contempt of court, and is illegal and void. This rule was unanimously held by the Supreme Court of the United States in *Wiswall* v. *Sampson*, 14 How. 52. In that case the execution sale took place on the 7th day of July, 1845, under a levy made on the 24th of the preceding February. Between the levy and the sale, to wit, on the 27th of June, a receiver had been appointed. Mr. Justice Nelson, delivering the opinion of the court, said:

"At the time, therefore, of this sale, the receiver was in the possession of the premises under the decree of the court of chancery. In other words, the possession and custody of them were in the court of chancery itself (as the court is deemed the landlord), to abide the final decree to be thereafter rendered in the suit pending. * * *

"When a receiver has been appointed, his possession is that of the court, and any attempt to disturb it, without the leave of the court first obtained, will be a contempt on the part of the person making it. This was held in *Angel*

v. *Smith,* 9 Ves. 335, both with respect to receivers and sequesterers.   When, therefore, a party is prejudiced by having a receiver put in his way, the course has either been to give him leave to bring an ejectment, or to permit him to be examined *pro interesse suo.*   *Brooks* v. *Greathed,* 1 Jac. & W. 176; 3 Daniell, Ch. Pl. & Prac. 1984. And the doctrine that a receiver is not to be disturbed extends even to cases in which he has been appointed expressly without prejudice to the rights of persons having prior legal or equitable interests; and the individuals having such prior interests must, if they desire to avail themselves of them, apply to the court either for liberty to bring ejectment or to be examined *pro interesse suo,* and this though their right to the possession is clear.   *Bryan* v. *Cormick,* 1 Cox, Ch. 422; *Anonymous,* 6 Ves. 287. * * *

"It has been argued that a sale of the premises on execution and purchase occasioned no interference with the possession of the receiver, and hence no contempt of the authority of the court, and that the sale, therefore, in such a case, should be upheld.   But, conceding the proceedings did not disturb the possession of the receiver, the argument does not meet the objection.  ˙ The property is a fund in court, to abide the event of the litigation, and to be applied to the payment of the judgment creditor, who has filed his bill to remove impediments in the way of his execution.   If he has succeeded in establishing his right to the application of any portion of the fund, it is the duty of the court to see that such application is made; and, in order to effect this, the court must administer it independently of any rights acquired by third persons pending the litigation; otherwise the whole fund may have passed out of its hands before the final decree, and the litigation become fruitless.   * * *

"As we have already said, it is sufficient for the disposition of this case to hold that while the estate is in the custody of the court, as a fund to abide the result of a suit pending, no sale of the property can take place, either on execution or otherwise, without the leave of the court for that purpose; and upon this ground we hold that the sale by the marshal on the two judgments was illegal and void, and passed no title to the purchaser."

It has been held that property in the hands of a receiver is still subject to taxation, and it is competent to levy taxes

against it; that the levy of taxes upon property in the hands of a receiver creates a lien, but that the taxes cannot be collected by a sale of the property under the tax laws; they can only be collected by the filing of an intervening petition praying for their payment. *In re Tyler*, 149 U. S. 164 (13 Sup. Ct. 785). The above case was cited and followed by the United States court for the district of South Dakota in *Ledoux* v. *La Bee*, (C. C.) 83 Fed. 761, and by the supreme court of Georgia in *Dysart* v. *Brown*, 100 Ga. 1 (26 S. E. 767). In *Virginia Iron Co.* v. *Bristol Land Co.*, (C. C.) 88 Fed. 134, tax sales to the State of real estate in the hands of a receiver were held void.

In the case of *Richards* v. *People*, 81 Ill. 551, a receiver was appointed of the real and personal property and choses in action of a railroad company. Subsequently Richards, with full knowledge of the receivership, brought suit and recovered judgment against the company, and instituted garnishment proceedings against certain persons having funds of the company in their possession. Being charged with contempt, Richards defended on the ground that there was no actual interference with the possession of the receiver. The court said:

"In this view of the case we cannot concur. It is based upon the mistaken theory that property or credits not yet actually reduced to the receiver's possession, although the title thereto has vested in him by virtue of his appointment, may be seized or attached by creditors of the original debtor with impunity, and that in so doing they are guilty of no interference with the rights of the receiver. But it is to be remembered that the receiver is the officer of the court, and that his possession is the possession of the court itself, and any unauthorized interference therewith, either by taking forcible possession of the property committed to his charge, or by legal proceedings for that purpose, without the sanction of the court appointing him, is a direct and immediate contempt of court, and punishable by attachment. *Noe* v. *Gibson*, 7 Paige, 513; *De Visser* v. *Blackstone*, 6 Blatchf. 235 (Fed. Cas. No. 3,840); *Lane* v. *Sterne*, 3 Giff. 629; *Skip* v. *Harwood*,

3 Atk. 564; *Hull* v. *Thomas*, 3 Edw. Ch. 236; *Russell* v. *Railway Co.*, 3 Macn. & G. 104; *Langford* v. *Langford*, 5 Law J. Ch. (N. S.) 60; *Spinning* v. *Trust Co.*, 2 Disn. 368. And, in our view of the case, it can make no difference in the application of the rule whether the property is actually or only constructively in the receiver's possession. Here the order appointing the receiver directed him to forthwith take possession, and, if necessary, to sue for and recover all the property of the railway company, whether real, personal, or mixed, and whether in possession or action. That order was the receiver's evidence of title, and authorized him to immediately reduce to possession the credits and choses in action which were garnished by Richards. The garnishee proceedings were a direct interference with the right of the receiver, since they attempted to deprive him of what was his under the order of his appointment. They were, therefore, an immediate obstacle interposed by Richards to the enforcement of the order of the court, and, as such, were plainly a contempt of its authority and powers."

To the same effect is the case of *Chafee* v. *Quidnick Co.*, 13 R. I. 442.

In *Hazelrigg* v. *Bronaugh*, 78 Ky. 62, an injunction was sued out to prevent a receiver from collecting certain rents. The court, after referring to the general rule that the possession of a receiver cannot be disturbed without leave of the court, said:

"Nor is the rule confined to property actually in the hands of the receiver. The court will not permit any one, without its sanction and authority be first obtained, to intercept or prevent payment to its receiver of anything which he has been appointed to receive, though it may not be actually in his hands. Kerr, Rec. p. 167."

That question was before this court in *Hudson* v. *Saginaw Circuit Judge*, 114 Mich. 116 (72 N. W. 162, 47 L. R. A. 345, 68 Am. St. Rep. 465). It was there said:

"It is a general rule that property in custody of the law is not subject to attachment or garnishment. The law does not permit one court to assume control over the representative of another court, or the property confided to

his charge. By this it is not meant that personal remedies against the individual may not be sought, but that any proceeding in the nature of an action *in rem*, whereby it is sought to reach the property which another court has taken possession of, is forbidden. Thus replevin from an officer holding under order of the court of chancery is punishable as a contempt. Even suits against a receiver in his representative capacity are forbidden, though the court appointing the receiver may, on cause shown, permit them. The probate court has not even this power respecting its officers, who can only be sued in the manner pointed out by statute; and a garnishee proceeding is not included among the statutory proceedings against executors and administrators in Michigan, though it is in some States. That administrators and executors are exempt from this process is the general rule. In Rood, Garnish. § 27, it is said:

" 'When property or money is *in custodia legis,* the officer holding it is the mere hand of the court. His possession is the possession of the court. To interfere with his possession is to invade the jurisdiction of the court itself; and an officer so situated is bound by the orders and judgments of the court, whose mere agent he is, and he can make no disposition of it without the consent of his own court, express or implied.' "

We are satisfied that these sales, made in violation of law, are a contempt of court, and must be set aside. The real and personal property of the Detroit Driving Club must be decreed to be sold by the circuit court commissioner of Wayne county, free and clear of all incumbrances, and the proceeds of the sale paid into the Wayne circuit court in chancery, for distribution among the secured and unsecured creditors of the club, according to their respective priorities. The case will be remanded to the court below, with directions to carry out the views herein expressed. The intervening petitioners will recover their costs of both courts against the complainants.

The other Justices concurred.