CAMPAU *v.* DETROIT DRIVING CLUB.[1]

MORAN *v.* CAMPAU.

1. INSOLVENT CORPORATIONS—RECEIVERS—JUDGMENTS—EXECUTION SALES—RES JUDICATA.

Complainants and intervening petitioners were directors of defendant club, of which C. was president and manager. Complainants obtained two judgments against the club, on one of which execution was issued, levies and sales of its property had, and execution returned satisfied; on the other, execution was issued and returned unsatisfied, a judgment creditors' bill filed, bill confessed, and C. appointed receiver. The People's Savings Bank, a junior judgment creditor with levy, assigned its judgment to intervening petitioners, who obtained an order setting aside the execution sales, and declaring them illegal and void, because, at the time

| | |
|---|---|
| 135 | 575 |
| s144 | 82 |
| s144 | 83 |
| s144 | 98 |
| 134 | 575 |
| 145 | 514 |

[1]Rehearing denied June 18, 1904.

they were made, the property was in the hands of the receiver. Subsequently, intervening petitioners filed a bill in equity charging C. with fraudulently procuring his appointment as receiver, and with misconduct in managing the affairs of the club, and praying that the first-mentioned judgment, the execution, levies, and sales thereunder, and the appointment of the receiver be declared void as against petitioners' judgment. *Held*, that, as the receiver had performed duties and acted in various matters by authority of the court, and the validity of his appointment had been recognized in some phases of the controversy, it must stand; and that, in view of the litigation had, the proceedings up to and including the levies made under complainants' execution could not be questioned.

2. CORPORATIONS—NOTES TO DIRECTORS—VALIDITY.

The fact that a demand note, given by a corporation to certain of its directors, was authorized at a meeting at which the payees constituted a majority of the quorum of the directors present, does not render it illegal, it appearing that it was for a debt then past due, on which suit might at once have been brought.

3. EXECUTION—RETURN—DISCHARGE—SETTING ASIDE SALE—PRIORITY OF LIENS.

Where an execution sale is set aside on petition in equity for want of authority in the sheriff to make it, the property being at the time in the hands of a receiver, the sheriff's return of the execution as satisfied will not be held to have discharged the levy, so as to make a later levy in favor of the petitioner a prior lien.

4. PRINCIPAL AND SURETY—PAYMENT—SECURITY—RIGHTS OF CO-SURETIES—CO-ORDINATE LIENS.

Where three of the five sureties on a money bond paid their proportion of the obligation, and received the note of the principal debtor therefor, on which they subsequently obtained judgment, and levied an execution on the property of the debtor; and the principal creditor afterwards obtained a judgment against the debtor for the balance of the debt, levied an execution on the same property, and then assigned the judgment to the remaining sureties,—*held*, that the relation of co-sureties was not terminated by such payment, but that, under the rule that security obtained by one co-surety inures to the benefit of all, the respective levies should be treated as co-ordinate liens. Per MONTGOMERY and HOOKER, JJ., affirming the decision of the lower court (Carpenter, J.); MOORE, C. J., and GRANT, J., to the contrary.

5. EQUITY JURISDICTION—RECEIVERS—GARNISHMENT.

> Where the court, through a receiver, has possession of the lands of an insolvent debtor, and of the rents and profits thereof, and jurisdiction of the parties interested, it can adjust the rights of the respective parties, and the rents and profits cannot be garnished by creditors. *Cohnen* v. *Sweenie,* 105 Mich. 643, distinguished.

6. SAME—ACCOUNTING.

> Until the receiver files his account of the rents and profits, the court cannot decide what shall be done with them.

Appeals from Wayne; Carpenter, J. Submitted April 23, 1903. (Docket Nos. 38, 39, 40.) Decided February 2, 1904.

Creditors' bill by Daniel J. Campau, Francis F. Palms, and George M. Vail against the Detroit Driving Club, in which Fred T. Moran and Worthy L. Churchill intervened by petition. Also, bill by said Moran and Churchill against all of the other parties above named, together with the People's Savings Bank, attacking the validity of the proceedings in the first suit, and the claims of the complainants therein. From a decree in the first suit determining the relative rights of the parties, and a decree dismissing the bill in the second suit, all parties, except the driving club, appealed. Moran and Churchill also undertook to appeal from a decision of Judge Donovan in supplementary proceedings in the first suit. Last-mentioned appeal dismissed; other decrees affirmed in substance.

Moran and Churchill also petitioned the Supreme Court for leave to garnish the receiver. Petition denied.

*Moore & Moore* (*Otto Kirchner*, of counsel), for Campau, Palms, and Vail.

*Fred A. Baker*, for Moran and Churchill.

*Keena & Lightner*, for People's Savings Bank, and of counsel for Moran and Churchill.

MOORE, C. J. The three cases relate to the same litiga-

tion, and were heard as one case, though a question is raised, which will be referred to later, whether the last-named case is properly here.

Some phases of this litigation have been before this court before in *People's Savings Bank* v. *Campau*, 124 Mich. 106 (82 N. W. 803), *Moran* v. *Wayne Circuit Judge*, 125 Mich. 6 (83 N. W. 1004), and *Campau* v. *Detroit Driving Club*, 130 Mich. 417 (90 N. W. 49). A reference to the opinions filed therein will aid in understanding the issues before us, and will make it unnecessary to make so full a statement of facts as would otherwise be required.

The bond referred to in *People's Savings Bank* v. *Campau, supra,* was signed by Messrs. Campau, Palms, Vail, Moran, and Churchill as sureties. The $18,366 judgment mentioned in *Campau* v. *Detroit Driving Club, supra,* represents the proportion of said bond paid by the first three of the above-named sureties, for which a demand note was given to them by the driving club, which note was sued upon and put into judgment. The $14,170 judgment obtained by the bank was for the balance of the debt to secure the payment of which said bond was given, and was assigned by the bank to the other two sureties.

In January, 1901, Messrs. Moran and Churchill filed a bill in chancery against Messrs. Campau, Palms, and Vail and the driving club, in which was recited a history of the transaction from the point of view of the complainants, and charging Mr. Campau, both before and after his appointment as receiver, with mismanagement, and with a purpose to obtain an unjust advantage over the complainants, and praying that the judgment in favor of Campau, Palms, and Vail, and the execution, levy, and sale thereunder, might be set aside, and that the judgment creditors' proceeding be held void, and the appointment of Campau as receiver be set aside, and also praying for other relief. The case was put at issue, and a hearing had before Judge Carpenter, who dismissed the bill of

complaint, "but without prejudice to the rights of the complainants in the original bill to file a new bill of complaint, if they shall be so advised, asking for their *pro rata* share of the purchase price of the property sold under the execution, or, if the sale is set aside, to the *pro rata* share of the rights acquired by the execution levy, as mentioned and referred to in the bill of complaint filed herein." From that decree an appeal is taken.

In the case of *Campau* v. *Detroit Driving Club*, 130 Mich. 417 (90 N. W. 49), Justice LONG, speaking for the court, wrote, among other things, as follows:

"The only object of this petition is to obtain a decree declaring the execution sales illegal and void because they were made when the property was in the hands of the court by its receiver. Incidental to this relief, the petition prays that direction may be given to the receiver to sell the real and personal property of the corporation free and clear of all liens and incumbrances, and distribution made of the proceeds among the secured and unsecured creditors. This second intervening petition is based upon a fact which occurred after the first petition was filed, viz., the execution sales of March 29 and April 3, 1900. Thus it appears that the only object of the second intervening petition is to obtain a decree declaring the sales void. The denial of the first petition is no bar to the filing of the second intervening petition.

"It appears from the record that the execution levy held by the petitioners under the assignment from the People's Savings Bank was subsequent to the one held by the complainants, and it was prior to the appointment of the receiver on the judgment creditors' bill. Under our statutes relative to execution sales, the petitioners had a right to redeem from the prior sale at any time within 15 months from the day the sale was made. Section 9185, 3 Comp. Laws. If the prior sale was illegal and void, the petitioners could not safely redeem from it. The complainants would get their money,—some $19,000,—but the petitioners would not get title to the property; so that it is apparent that the second intervening petitioners are pursuing the only safe course open to them to preserve their rights."

An order reading in part as follows was entered in the case:

"That the execution sales made on the 29th day of March, 1900, and the 3d day of April, 1900, of the personal property and real estate of the Detroit Driving Club, by the sheriff of the county of Wayne, under and by virtue of an execution issued by the circuit court for the county of Wayne on a judgment rendered on the 30th day of March, 1899, in favor of Daniel J. Campau, Francis F. Palms, and George M. Vail, and against the Detroit Driving Club, for $18,366 damages and costs, be, and the same are hereby, set aside, and the said sales are hereby declared and decreed to be illegal and void.

" And it is further ordered, adjudged, and decreed that Daniel J. Campau, as the receiver in this cause, be, and he is hereby, ordered to resume possession of said real and personal property, and to continue in possession thereof until the further order of the circuit court for the county of Wayne.

"And it is further ordered, adjudged, and decreed that this cause be, and the same is hereby, remanded to the circuit court for the county of Wayne, with directions to cause said real estate to be sold by a circuit court commissioner for the county of Wayne, subject to the first mortgage thereon, to the highest bidder for cash;    *    *    * and that the said personal property be sold as a unit to the highest bidder for cash; that, out of the proceeds of such sales, the commissioner shall first pay the costs and expenses of the sale, including his commissions, and the balance of said proceeds to be paid into the circuit court for the county of Wayne, in chancery.    *    *    *

" It is further ordered, adjudged, and decreed that the said real and personal property be sold free and clear of all liens and incumbrances whatever, except the first mortgage on said real estate, and that the proceeds of such sale, when paid into court, shall be distributed, subject to the expenses of the receivership, among the secured and unsecured creditors of the Detroit Driving Club, according to their respective rights and priorities.

" It is further ordered, adjudged, and decreed that the necessary proceedings be taken in the circuit court for the county of Wayne to ascertain and determine the liens and incumbrances of every name and nature upon said real and personal property other than the first mortgage on said real estate, and that the rights and priorities of the several claimants be ascertained and determined according to the rules and practice of the court, and that the court

shall defer a sale of said real and personal property until the rights and priorities of the several claimants have been established and determined by the court."

After the case was remanded, it was referred to a circuit court commissioner, who made the following findings:

"1. I find that the Union Trust Company of Detroit, Michigan, as trustee for the bondholders, has a first lien upon the real estate of said Detroit Driving Club to secure bonds to the amount of $75,000, bearing interest at the rate of 6 per cent. per annum, payable semi-annually on the 1st day of July and January of each year. The principal sum of said mortgage will not mature until the 1st day of July, 1904. All the interest on said mortgage which became due and payable thereon up to and including the 1st day of July, 1902, has been paid, and there is now due on said mortgage the sum of $75,000, with interest thereon at the rate of 6 per cent. per annum, payable semi-annually, from the 1st day of July, 1902.

"2. I find that the said Daniel J. Campau has a second lien upon said real estate for interest upon said first mortgage paid by him either personally or as receiver, and for amounts paid by him for taxes and insurance upon said real estate, for the sum of $17,546.04.

"3. I find that Daniel J. Campau has a mortgage upon said land, given to secure a debt of $55,000, with interest due semi-annually at the rate of 5 per cent. per annum, which was owing by said Detroit Driving Club to said Campau, all of which debt is now due; that said mortgage is a third lien upon said property, and the total amount due thereon is $65,355.48.

"4. I find that Daniel J. Campau, as receiver appointed in the above-entitled cause, had expended $2,152.34 in repairs on said property under and by virtue of an order authorizing him to do so, and there is now due said receiver for said repairs the said sum, and that said receiver has a fourth lien upon said real estate for the amount of the repairs so made upon said premises.

"5. I find that, at the time the receiver was appointed, there were two judgment levies upon the real estate of the Detroit Driving Club; that one of these levies was under an execution issued to the sheriff of the county of Wayne upon a judgment rendered by the circuit court for the county of Wayne upon the 31st day of January, 1899, in

favor of Daniel J. Campau, Francis F. Palms, and George M. Vail, and against the Detroit Driving Club, for $18,366 damages and $22 costs, and under which judgment and execution the sheriff of the county of Wayne made a levy upon the race track and grounds of the Detroit Driving Club on the 4th day of April, 1899; that the other execution levy existing on said real estate at the time the receiver was appointed was a levy made upon the 16th of November, 1899, under an execution issued to the sheriff of the county of Wayne on a judgment rendered by the circuit court for the county of Wayne in favor of the People's Savings Bank and against the Detroit Driving Club for $14,170 and $38.10 costs, which judgment and levy has been assigned by said People's Savings Bank to Fred T. Moran and Worthy L. Churchill, the intervening petitioners in this cause; that the said two execution levies should be considered equal in priority, the same as if said executions had been simultaneously levied;  *  *  *  that said Fred T. Moran and Worthy L. Churchill, as the assignees of said judgment in favor of the People's Savings Bank, and the said Daniel J. Campau, Francis F. Palms, and George M. Vail, as the plaintiffs in the said judgment in their favor, have a fifth lien on said real estate for the amount of said judgments, viz., $37,808.31.  *  *  *

"I find that said lienholders are entitled to priority in the amounts for rents, profits, etc., derived from said real estate since the appointment of said receiver, and in the personal property belonging to said defendant, as follows:

"6. Daniel J. Campau, as receiver, is entitled to $2,152.34, being the amount expended by him in repairs on said property under and by virtue of the order of this court.

"7. I find that Daniel J. Campau is entitled to the sum of $2,250, being the amount paid by him for interest due on the first mortgage July 1, 1902, under the order of this court.

"8. I find that Daniel J. Campau, Francis F. Palms, George M. Vail, Fred T. Moran, and Worthy L. Churchill are entitled to the sum of $37,808.31, being the amount of judgments held by said parties against said defendant.

"9. I find that Daniel J. Campau, personally and as receiver, is entitled to the sum of $25,651.52, being the amounts paid by him as interest on the first mortgage, taxes, and insurance, and interest due on the second mortgage."

Exceptions were taken by both parties to these findings, and a hearing was had before Judge Carpenter; who made an order "that all of the exceptions to said commissioner's report be, and the same are hereby, overruled, with this qualification: That, so far as said commissioner's report undertakes to pass upon and determine the liens and incumbrances upon the rents and profits of the real estate of the Detroit Driving Club since the appointment of the receiver, the court holds that the disposition to be made of the rents and profits was not within the scope of the order of reference, and in that respect said report is not confirmed;" that the issue joined on the third intervening petition, and the disposition to be made of the rents and profits, be reserved from the decree for future adjudication; and referred the same to the Hon. Joseph W. Donovan, circuit judge, for that purpose. An appeal was taken to this court from this decree by both parties.

Later a hearing was had before Judge Donovan, who held, among other things, as follows:

"While the club property is worth some $200,000, and it owes about the same amount, a large part of it is in mortgages on real estate, and not over $10,000 in personal property, aside from the rents and earnings of the races during the past three seasons, and there is no valid reason shown why one creditor has a better right to the rent and income than another, except, perhaps, to keep up the taxes, the interest and insurance, and preserve the property and its good will as a going concern, which I find to be very important, as it now ranks very high among the driving clubs of the country. This rank should not be destroyed, but carefully preserved. To do this, two races—a running and a trotting—have been allowed for this season.

"A decree will, therefore, direct the receiver to report early on property acquired through rent and income, to be deposited in People's Savings Bank at interest, two-fifths for the benefit of the two complainants and three-fifths for the three defendants, after actual legal expenses and reasonable charges for a receiver, and after a hearing on a court order."

No formal decree has ever been entered based upon this decision, but an attempted appeal has been taken by Messrs. Moran and Churchill.

The first question presented is whether an attack can now be made upon the judgment creditors' proceedings up to and including the appointment of the receiver. The receiver was appointed by the court, and has been authorized upon his petition to borrow money to pay interest, taxes, and insurance, and to hold several race meetings. He has done what he was authorized to do, and this court in *Moran* v. *Wayne Circuit Judge*, 125 Mich. 6 (83 N. W. 1004), refused to interfere. We think, too, the decision in *Campau* v. *Detroit Driving Club*, 130 Mich. 417 (90 N. W. 49), could not have been reached except upon the theory that the appointment of Mr. Campau as receiver was valid and must stand.

The next question for consideration is, What shall be done with the $10,343 judgment obtained by Messrs. Campau, Palms, and Vail? They were creditors of the Detroit Driving Club, but not as co-sureties. with Messrs. Moran and Churchill. We agree with Judge Carpenter that Mr. Campau and his associates were common creditors with the People's Savings Bank and with Messrs. Moran and Churchill, each of whom had a right, if, by diligence, he could do so, to secure satisfaction of his claim. See *American Exchange Nat. Bank* v. *Ward*, 111 Fed. 782, 49 C. C. A. 611, 55 L. R. A. 356.

The next question requiring attention is whether one execution levy shall have priority over the other, and, if so, which one. It is the claim of the counsel for Moran and Churchill that, inasmuch as Campau, Palms, and Vail were a majority of the quorum of the directors present when the resolution was adopted to execute to such of the sureties as paid their share of the debt due the bank a demand note or notes, the adoption of said resolution, the giving of the notes, and the judgment thereon are illegal, and, as a result thereof, the judgment assigned to Moran and Churchill should have priority over the levy made in

favor of Campau, Palms, and Vail. This claim would have more merit were it not for the fact that the demand note was given for a debt then past due, which might have been sued at once. See *American Exchange Nat. Bank* v. *Ward,* 111 Fed. 782, 49 C. C. A. 611, 55 L. R. A. 356. In view of the litigation heretofore had, and the disposition made thereof, we do not think the proceedings up to and including the levy made under the Campau, Palms, and Vail execution can now be questioned.

It is further claimed that "when the sheriff sold the real and personal property of the Detroit Driving Club on the execution in favor of Campau, Palms, and Vail, and returned the execution wholly paid and satisfied, the execution became *functus officio,* and the plaintiffs therein can only sue out a new execution under section 10341, or sections 9210–9212, 3 Comp. Laws; that section 9212 expressly provides that such new execution shall not affect any title, incumbrance, or levy which shall have accrued before the levy under the new execution." We have examined the statute and the cases cited by counsel, and think they do not apply to a case like the present. When the receiver was appointed, there was a valid levy under the Campau, Palms, and Vail execution. Without obtaining leave of court, after the receiver had entered upon the discharge of his duties, the sheriff sold the property under this levy, a deed was made, and the execution returned satisfied by the sheriff. Upon a proceeding instituted by Moran and Churchill, that sale and the deed were set aside by this court as void, because in contempt of court. See *Campau* v. *Detroit Driving Club,* 130 Mich. 417 (90 N. W. 49). If the sale and deed were void for want of authority upon the part of the sheriff to make them, was not the return of the officer equally void for want of sufficient authority to make it? It is not in accordance with our idea of logic or our sense of justice to say that, in an equity proceeding upon the application of Moran and Churchill, a sale made to satisfy an execution, and the deed issued thereunder, for which nothing was paid in fact

except the return made by the officer, shall be held to be void at their instance, and at the same time the return of the officer shall be held valid enough to discharge the execution levy, and make a later levy made in their favor a first lien. If Moran and Churchill are placed in the position they were before the void sale, they ought not to complain.

It is the claim of Campau, Vail, and Palms that, as the levy under their execution was made first, it should have priority. It is their claim that, when they paid their *pro rata* share of the bond upon which they and Moran and Churchill were sureties, they immediately became creditors of the driving club for the amount so paid, and were entitled to do what they have done to secure the collection of the amount so paid. It is said that in this connection it is important to remember that the People's Savings Bank still has an interest in the judgment assigned to Moran and Churchill. It is the contention of Keena & Lightner, in the brief they have filed, that, inasmuch as all of these parties were sureties on the bond, they all must share in any security or other assets of the principal debtor. In support of their contention counsel say:

"The application of the maxim, 'Equality is equity,' leads to this conclusion. The general effect of this maxim and its large application in equity is shown in 1 Pom. Eq. Jur. (2d Ed.) §§ 405–412. We quote the following, which is especially pertinent to the rights of co-sureties:

"'Finally, the most important doctrine, perhaps, which results from the principle, "Equality is equity," is that of contribution among joint debtors, co-sureties, co-contractors, and all others upon whom the same pecuniary obligation arising from contract, express or implied, rests. This doctrine is evidently based upon the notion that the burden in all such cases should be equally borne by all the persons upon whom it is imposed, and its necessary effect is to equalize that burden whenever one of the parties has, in pursuance of his mere legal liability, paid or been compelled to pay the whole amount, or any amount greater than his proportionate share. No more just doctrine is found in the entire range of equity, and,

although it is now a familiar rule of the law, it should not be forgotten that its conception and origin are wholly due to the creative functions of the chancellor.'"

They also cite a number of cases; among others *Union Nat. Bank* v. *Rich*, 106 Mich. 319 (64 N. W. 339), and *Freud* v. *Ruhl*, 126 Mich. 129 (85 N. W. 463).

There is no doubt the rule as to co-sureties is as stated by counsel, but is that rule applicable to the facts as shown here? In 1 Brandt, Suretyship (2d Ed.), § 273, it is said:

" After the debt of the principal is paid by several sureties in equal proportions, the equities between them as co-sureties cease, and each becomes an independent creditor of the principal for the amount paid by him. In such case, if one afterwards receives indemnity from the principal, the others are entitled to no part thereof."

In Sheldon, Subrogation, at section 148, the law is stated thus:

"Though whatever payment one surety may receive from the principal must, in general, inure to the benefit of all, yet, where payment of the debt for which all were liable has been made by one, and the claim against each for contribution has become fixed, each may, on his separate account, look to the principal for the reimbursement of his own share."

In *Moore* v. *Isley*, 22 N. C. 372, one of the sureties paid his share and thereafter acquired security. His former co-surety filed a bill to compel him to contribute, but the supreme court said:

" While the relation of joint sureties exists, funds received by one are to be applied for the common benefit of all; but, after that connection has been severed, each of the sureties has his distinct and several claim to prosecute because of what he has paid for his principal, and the others have no right to demand participation in what his diligence may enable him to procure while thus prosecuting this several claim."

In the case of *Harrison* v. *Phillips*, 46 Mo. 520, the court said:

" We will, then, first inquire whether, if one of several

sureties, after the settlement and liquidation of the claim and the payment of his proportionate share, shall, upon his own motion, and without the aid or co-operation of his co-sureties, procure, by attachment or otherwise, a reimbursement out of the property of the principal, he is bound to share such reimbursement with the co-sureties.

"After the default is satisfied by the payment by each surety of his proportionate share, it is well settled that their claims upon the principal become thereby several, and not joint, ones. *Gould* v. *Gould*, 8 Cow. 168. After the debt is thus paid, each surety becomes an independent creditor, and stands in the same relation to the principal and to his co-sureties as any other independent creditor would stand in to a common debtor and other creditors if their equities were equal. It is not pretended that in the latter case, if the creditor should succeed in collecting his debt, the other creditors would have any claim whatever upon the fund; and, if not, upon what principle can co-sureties, whose claim has thus become several, demand an interest in what one of them may be able to collect of his debtor?

"Upon this subject the supreme court of New Hampshire uses the following language:

"'It is a well-settled general rule that the demands of sureties against the principal for money paid by them severally are in their nature several, and that they cannot join in a suit against the principal. *Brand* v. *Boulcott*, 3 Bos. & P. 235; *Pearson* v. *Parker*, 3 N. H. 366. On what ground, then, can a surety claim any portion of what a co-surety has received in satisfaction of his separate claim? We think there is no ground on which such a claim can be sustained.' *Messer* v. *Swan*, 4 N. H. 488."

To the same effect is *Gould* v. *Fuller*, 18 Me. 364. Our attention has not been called to any case to the contrary.

In the case before us, Campau, Vail, and Palms, three of the sureties, paid their share of the bond, and afterwards obtained their judgment and made the levy. Moran and Churchill did not pay their share of the bond. The creditor, the People's Savings Bank, sued, and obtained a judgment, which judgment was assigned to Moran and Churchill, who now stand in the place of the bank. Under the authorities which we have quoted, it

seems clear that, instead of the two judgments being co-ordinated, the one obtained by Campau, Vail, and Palms must have priority over the other.

Moran and Churchill have filed a petition for leave to garnishee the rents and profits in the hands of the receiver. In support of this petition, counsel says:

"If this court should reach the conclusions:

"(1) That the execution levy in favor of Campau, Palms, and Vail has not been discharged and satisfied of record by the return of the execution satisfied, and the priority of the levy in favor of the People's Savings Bank thereby established, under the statute on the subject, and—

"(2) That it is competent by judgment creditor's bill to reach the rents and profits of real estate in a case where the title stands in the name of the judgment debtor, and is subject to execution, and this is known to the judgment creditor, on the theory that such rents and profits are equitable assets, notwithstanding the statute reserving the possession and the rents and profits to the judgment debtor pending the expiration of the period of redemption,—

"Yet the question would still remain in this case whether the execution levy, the judgment creditors' bill, and the transfer to the receiver thereunder are not fraudulent and void as against the People's Savings Bank and Moran and Churchill, as creditors of the Detroit Driving Club."

We think this question is foreclosed by the proceedings in this court heretofore decided; but, if it is not, we think it follows, from the discussion and conclusions we have reached as to the priorities of the levies, that the proceedings resulting in the appointment of the receiver and the transfer of the property to him are not void as against the People's Savings Bank and Moran and Churchill, as creditors of the driving club. In *Cohnen* v. *Sweenie*, 105 Mich. 643 (63 N. W. 641), it was held a receiver might be garnished; but in that case his return showed he had collected sufficient to pay the debts in the proceeding in which he was appointed receiver, and the expenses of the receivership, and had a surplus in his hands,—a very different

case from the one at bar. The court, through the receiver, has possession of the land and of the rents and profits, and jurisdiction of the parties interested. There is no good reason why the rights of the respective parties should not be adjusted without the intervention of some other court, and the petition should be denied. See *Hall* v. *Nester*, 122 Mich. 141 (80 N. W. 982); *Tremper* v. *Brooks*, 40 Mich. 333 (29 Am. Rep. 534); *Smith* v. *McNamara*, 15 Hun, 447.

The last question calling for consideration is that of rents and profits. As before stated, Judge Carpenter held that no authority was given to the circut court commissioner to pass upon that question, and referred that feature of the case to Judge Donovan. It does not appear from any of the records that the receiver has as yet ever submitted to the court his account, nor does the *status* of the account appear. It is true that in the case of *Moran and Churchill* v. *Campau et al.,*—in which the relief asked was that the judgment in favor of Campau, Palms, and Vail, and the execution and levy thereunder, and the appointment of the receiver should be held void as to complainants, and that the net proceeds of the race meeting of 1900 be applied to the payment of Moran and Churchill,—Mr. Campau testified as to what he had received as a result of the race meeting of 1900, and what he had paid out, and claimed it left a net profit of $701.94; but it also appeared in the same connection that his account as receiver had never been presented or passed upon by the court in the cause in which he was appointed as receiver. Other race meetings have been authorized and held. What expenses have been incurred and what returns have been received do not anywhere appear. No account of the receiver showing receipts and disbursements has as yet been filed. As before stated, no decree has been signed by Judge Donovan. Until the receiver files his account of the rents and profits, we cannot decide what shall be done with them. This he should proceed to do at as early a day as is practicable.

Decrees should be prepared in accordance with this opinion.

GRANT, J., concurred with MOORE, C. J.

MONTGOMERY, J.   I agree with the opinion of Mr. Justice MOORE, except in so far as it holds that Campau, Palms, and Vail have occupied a position which entitles them in equity to claim priority of right under their levy as against their co-sureties.   The general rule undoubtedly is that one co-surety who receives security from the principal debtor, whether it be given to indemnify him solely or to indemnify himself and co-surety as well, is bound, as between himself and his co-surety, to account for such security.   1 Brandt, Suretyship (2d Ed.), § 268.   This equity continues so long as the relation of principal and surety subsists.   It is contended, however, that this equity does not obtain in this case, for the reason that the complainants elected to sever their relation of co-sureties, paid their proportion of the principal debt, and secured themselves by an immediate attachment of the property of the principal debtor.   It will be readily seen that, if any such exception be ingrafted upon the general rule, it will furnish to the surety who acts at once upon the maturity of the debt the opportunity to overreach his co-surety by paying his proportion of the obligation and seizing the property of the principal debtor, which constitutes in equity the primary fund for the payment of the debt.

It is true that, where the sureties discharge their principal's debt by paying the same in equal proportions, all the former sureties become creditors of the principal debtor, and the rule that the law protects the vigilant applies from thence on.   1 Brandt, Suretyship (2d Ed.), § 273. There are cases, also, which hold that, where one surety pays and discharges the entire obligation, he then becomes a creditor of his co-surety for his proportion of the obligation, and of the principal debtor for the remainder, and the property or money realized from the principal debtor is not to be treated as received for the common benefit of

both sureties, where the payment is made by the principal debtor for the sole benefit of the paying surety. Such a case is *Gould* v. *Fuller*, 18 Me. 364. Of this case the learned authors of White & Tudor's Leading Cases in Equity say:

"This seems to be carrying too far the exception to a settled and salutary principle of equity. If the principal has given securities to one surety, the latter cannot, in chancery, recover contribution from his co-surety, without accounting for the property, and either showing how much he received upon it, and making a ratable allowance of the proceeds, or showing that he could not, by reasonable diligence, realize from it,"—citing *Goodloe* v. *Clay*, 6 B. Mon. 236, and other cases.

The case of *Gould* v. *Fuller* is an extension of the rule that, where the relation of co-surety has been severed by agreement, or by payment of the principal's debt by the two sureties in just proportions, the relation of co-surety no longer exists. *Moore* v. *Isley*, 22 N. C. 374, and the other cases cited by Mr. Justice MOORE. And in the main case it was said that the payment of the entire debt by one co-surety terminated the relation of co-sureties, and thereupon the rule permitting one co-surety to contract for his several indemnity was applied. Whether this holding can be sustained on principle, or whether it be subject to the criticism quoted from White & Tudor, the case does not go the length of ruling this case, where the entire debt was not paid. The relation of co-sureties was distinctly terminated; and we see no reason in equity for extending the rule which shall enable one co-surety to overreach his co-surety, or for ingrafting upon the general rule an exception which shall have this effect.

HOOKER, J., concurred with MONTGOMERY, J. CARPENTER, J., did not sit.