## WILLIAM HAKE v. WILLIAM COACH.

*Appealable order—Partnership accounting.*

1. A decree, in order to be appealable, need not have disposed of all of the merits; citing *Lewis v. Campau,* 14 Mich. 458, 460; *Barry v. Briggs,* 22 Id. 201, 204.

2. A decree in a partnership accounting suit which fixes the time at which the accounting is to commence, the period which it is to cover, the respective rights of the parties with regard to the buisness of the partnership, and with regard to the business which is claimed by the defendant to have been no part of the partnership, said contention being decided adversely to the defendant, and which directs the commissioner, after fixing the standing and rights of the parties in the various matters in dispute, to state an account upon said order as a basis, is appealable.

Bill for a partnership accounting. Defendant appealed from an order referring the case to a special commissioner to state the account. Complainant moves to dismiss the appeal. Argued May 7, 1895. Denied May 21, 1895. The facts are stated in the opinion.

*D. E. Corbitt,* for motion.

*Chadbourne & Rees, contra.*

LONG, J. Motion is made in this Court to dismiss the appeal of the defendant from an order or decree of the court below. The complainant contends that the order or decree is not appealable.

The decree made below is as follows:

"1. That the said parties entered into a copartnership in the year 1885, for the purpose of carrying on a lumbering business in the Upper Peninsula in the State of Michigan in lumbering certain lands then owned by the parties in common.

"2. That, by the terms of said partnership, the complainant was to furnish money to carry on said business, and the defendant was to take charge of the active operations, but without other compensations than having his actual living expenses and such expenses as were made necessary by the business paid by the firm.

"3. That the active operations of said firm commenced in the month of September, 1885. The defendant reported his doings to the complainant from time to time, at intervals of about three months, until the month of July, 1888, at which time the parties had a settlement between themselves, and settled all the partnership dealings, and whatever money had been advanced by the complainant more than by the defendant was repaid him by the conveyance of an interest in certain lands which the defendant owned in the state of Louisiana, by which conveyance the complainant was overpaid, so that, for the purpose of evening the account, the complainant paid the sum of $505 to the firm.

"4. At the time of the said settlement, the liabilities of the said firm were substantially paid, and they had on hand an account due from Joseph Gregory of $27,330. They had in the bank at Hancock $4,068.92, and cash in the hands of the complainant $1,987.75, consisting of $1,252.75 on deposit with him, and $735 collected by him at about that time. They also had logs at Funke's mill, which they estimated at about $16,000, and their camp equipage, which they estimated at about $7,000. Each of said parties owned one-half of said accounts, money, and property.

"5. The said parties then agreed to continue the lumbering business. The defendant returned to the Upper Peninsula, and took possession of all the property, accounts, and money belonging to the said firm as aforesaid; and, in the month of September following, he made a contract for several tracts of timber and, in the course of the next three years, he made contracts for large amounts of timber for which he paid large sums of money; but all of said contracts were taken in the individual name of the defendant. That substantially all of the business of said firm after the commencement of the business, in September, 1885, was transacted in the name of the defendant. The defendant made no detailed report of his doings to the complainant after their settlement in 1888, until after the commencement of this suit.

"6. It is now claimed by the defendant that several of the contracts that he made for the purchase of timber, and on which he made large profits, to the amount of $40,000, as claimed by the complainant, and to the amount of $30,000 and upwards, as conceded by the defendant, were his individual transactions, in which the complainant had no interest, and in which profits the complainant claims that he is entitled to share.

"7. It is further ordered, adjudged, and decreed in relation to the matters mentioned in the preceding paragraph that the following transactions claimed by the defendant to have been his individual transactions, constituting the matters referred to in said paragraph 6, were matters in which the said complainant is entitled to share, namely:

"*a*—The transaction mentioned in the pleadings, and known in this case as 'Section 31.'

"*b*—The transaction known as the 'Robinson Deal.'

"*c*—Purchase made August 31, 1892, of land afterwards . sold to Dalzell and Rice.

"*d*—Purchase made of Mrs. Boeing.

"And that the above and all of the contracts and business of the said defendant since the time of the said settlement in 1888 down to the time of the commencement of this suit were partnership dealings, for all of which the said defendant should account to the said complainant, and that the complainant was and is entitled to a distribution of the profits thereof.

"8. The complainant also claims that the defendant has received large quantities of logs for which he has not accounted, and that the defendant has rendered an account for large expenditures which were not proper charges against said firm; and inasmuch as the depositions are very voluminous, and the items of accounting very numerous, it is further ordered that this cause and all the evidence and proofs therein be, and the same is hereby, referred to Charles B. Blair, as a special commissioner, to state an account between the parties, and that said account be taken upon this order as a basis; and that in stating such account the said commissioner will charge the defendant with all the money, accounts, and property that he received which belonged to said firm after the settlement aforesaid. He will also charge the said defendant with all profits that he made on the contracts for the purchase of different tracts of timber during said partnership after the time of said settlement, and

down to the time of the commencement of this suit. He will also charge him with all logs and lumber that he received during the same time for which he has not properly accounted, if any. He will also charge the said defendant with all the profits that he made by dealing with the money or property of the said firm and for which he has not accounted, if any. He will also charge the said defendant with all money, lumber, logs, stocks, and property of every kind that he received which belonged to said firm during said partnership after the time of said settlement as aforesaid. And he will credit the said defendant with all money and property which he has properly used for the benefit of said firm.

"He will also credit the said complainant with all money that he advanced and paid for the benefit of said firm after July, 1888, and charge him with all money he received from said firm within the same time.

"And that the said commissioner report his findings to this court with all convenient speed."

The bill in this case was filed by the complainant for an accounting of partnership matters between the complainant and defendant, and alleges a partnership business commencing in 1885, and running to the time of the filing of the bill, originally begun for the purpose of engaging in the lumbering of certain timber and timber lands then owned by the parties in common. Aside from the admitted partnership business between the parties, the bill alleges that the defendant was engaged in lumbering other lands, to wit, a piece of land known as "Section 31," and which he (defendant) says was an individual enterprise of his own, while the complainant charges that whatever money and time were expended on said section 31 were taken out of the firm of Coach & Hake, and whatever profits were made in lumbering on that section rightfully belong to the said firm. The bill also charges that the defendant has purchased lands and timber in different places in the State of Michigan and in the state of Wisconsin, but that any money that has been paid for said lands and timber has been taken out of the money belonging to said firm of Coach & Hake. The bill

asks that the defendant be required to pay over to complainant all moneys that shall be found equitably his due, and that the partnership be dissolved, and asks for an account of the partnership business, and for an account of his business in connection with said section 31. The answer admits the partnership, and denies that the business relating to section 31 had any connection with the firm business, but that it was wholly and entirely the individual business of the defendant, and gives an account of the partnership business as distinguished from such individual business down to the time of the commencement of the suit. Proofs were taken before commissioners upon notices and stipulations, and a stipulation was finally made for a hearing at the November term of court in Kent county, wherein it was agreed that a hearing should be had before the court upon the proofs so taken on the whole case without any reference. The case was argued before Judge Grove in November, 1894, and submitted to him for decision; and on March 18, 1895, the decree from which the appeal has been taken was filed.

It is apparently true, as contended, that—

By paragraph 1 of the decree the court decides that there was a copartnership, and fixes the nature of the business entered into.

By paragraph 2 of the decree the terms of the partnership are fixed.

By paragraph 3 the decree decides various things to have been done by the parties, and that they had a settlement in July, 1888, and fixes the terms of that settlement and the amount paid in by the complainant at that time.

By paragraph 4 the decree fixes absolutely the amount of the assets of the firm in cash, accounts, and property, and the standing of the parties with reference thereto.

By paragraph 5 of the decree the judge decides finally and absolutely the agreement to continue the business, and that the defendant took possession of all the assets of the firm, and that he entered into certain contracts on

behalf of the firm, which were taken in the individual name of the defendant.

By paragraph 6 of the decree the judge states the contention between the parties with regard to transactions claimed by the defendant to have been individual transactions, and fixes the amount of the profits made thereby as, exceeding $30,000.

By paragraph 7 of the decree the judge decides finally and absolutely against the defendant with regard to these transactions, enumerating them specifically as constituting the matters referred to in paragraph 6, where he states the dispute between the parties, and holds that they were matters in which the said complainant is entitled to share, and, following the enumeration of these specific transactions, finds that the above and all other contracts and business of the defendant down to the time of the suit were partnership dealings, for all of which the defendant should account to the complainant, and that the complainant was and is entitled to a distribution of the profits thereof.

In paragraph 8 of the decree the judge, after stating certain claims of the complainant, and that the depositions are very voluminous and the items of the accounting very numerous, further orders that the cause and all the evidence and proofs therein be referred to a special commissioner to state an account between the parties, and that said account be taken upon this order as a basis, and gives directions to the commissioner to charge the defendant with all the moneys, accounts, and property that he received which belonged to the firm after the said settlement, and with all the profits that he made on the contracts for the purchase of different tracts of timber during said partnership from the time of said settlement down to the time of the commencement of the suit; also with all logs and lumber that he received during the same time for which he has not properly accounted, if any, and with all profits that he made by dealing with the money or property of the firm and for which he has not accounted, if any, and with all money, logs, lumber, stocks, and property of every kind that he received which belonged to said firm during said time; and to credit the defendant with all money and property which he has properly used for the benefit of said firm.

In the final paragraph of the decree the commissioner is instructed to credit the complainant with all money

that he advanced and paid for the benefit of said firm after July, 1888, and charge him with all money he received from said firm within the same time.

The decree not only fixes the time at which the accounting is to commence, and the period which it is to cover, but it also fixes the respective rights of the parties with regard to the business of the partnership, and with regard to the business which is claimed by the defendant to have been no part of the partnership; and it directs the commissioner, after fixing the standing and rights of the parties in the various matters in dispute, to state an account upon this order as a basis. The decree is final as settling the basis of the accounting, and it is left to the commissioner to figure up the various matters in controversy on that basis, and report to the court.

In order to be appealable, it is not necessary that the decree should dispose of all the merits. As was said in *Barry v. Briggs*, 22 Mich. 201, 204:

"The nature of any order as a decree or final order or as not final depends entirely on the effect produced by the adjudication upon the rights and interests of parties; and the usual distinction between interlocutory and other orders, depending on the stage of the cause in which they are made, is not the test for appellate purposes. An adjudication made at any stage of a cause may have such an effect as to render it appealable. The case of *Lewis v. Campau*, 14 Mich. 458, is an example of this. The order appealed from in that case was made at a very early stage of the controversy. And it is only after considering the operation of the order now before us that we can properly determine its appealable character."

In *Lewis v. Campau*, 14 Mich. 458, 460, it was said:

"It is not necessary that a decree should dispose of all the merits. Whenever the court finally adjudicates any part of them, although the practice of making separate decrees without necessity is very reprehensible, yet the partial decree is neither void nor interlocutory."

The decree in the present case goes much further in passing upon and deciding the merits of the case than did

the decree in the case of *Candler v. Stange,* 53 Mich. 479, 480.   In that case the decree was entered, declaring the partnership dissolved, and referring it to a commissioner to take proofs as to the time the partnership continued and the matters and business covered thereby, and to report the same to the court.   The commissioner made his report, to which defendant excepted.    The circuit court sustained the exception, and decreed that the partnership continued in full force and operation until January 30, 1883.   From this decree the complainant appealed.    The defendant contended that the decree was not final, and therefore not appealable.    It was said:

"It was certainly not final in the sense that it disposed of the controversy between the parties, but it was final as settling the basis for accounting, and the basis fixed upon entitled the parties to extend the accounting over a period which neither party, by his pleading, had claimed to be within the life of the partnership.   If this was not admissible, an appeal was allowable, within the previous decision of this Court.   *Lewis v. Campau,* 14 Mich. 458; *People v. Jones,* 33 Id. 303; *Maxfield v. Freeman,* 39 Id. 64; *Taylor v. Sweet,* 40 Id. 736; *Morey v. Grant,* 48 Id. 326."

In *Perrin v. Lepper,* 72 Mich. 454, a decree was made that the administrator of Perrin's estate should account for certain property, the value to be determined as directed; that the parties should make up an account of their doings, and file the same with the register of the court; and reference was made to a commissioner to take full proofs, if necessary, in addition to the proofs already taken, and to state an account upon certain principles set forth in the decree.   This decree was appealed from, and motion made to dismiss.   It was said:

"We do not think, under our previous decisions and the practice, this motion can be sustained.   Substantial rights are affected.   The Sibley heirs' claim was disposed of entirely.   Claims were made against the Perrin estate for large amounts, which, under the order, were rejected; and claims made by the Perrin estate were heard, and to a very large amount rejected by the decree

appealed from. The order of the circuit court as to these was in its effect a final disposition thereof; and, when such is the effect, the order or decree is always regarded as appealable. It is the effect, and not the form, of the order or decree, or the particular classification of the same, which determines the question of whether or not it is appealable."

In the decree in the present case the defendant is deprived of a substantial right if his claim is supported by the evidence taken. Under his answer and cross-bill, he claims that he is entitled to all the profits made upon a certain transaction, and that he is also entitled to all the interest in certain lands or the timber on certain lands which he purchased individually, and for his individual use. The order or decree of the circuit court makes final disposition of these questions, and directs an accounting thereon.

We are not called upon to determine the rights of the parties in this controversy on this motion, but we may look into the claims of the parties and what has been decreed. *Petrie v. Torrent*, 88 Mich. 43, came to this Court on appeal, and the basis of the accounting was determined here.

We are of the opinion that the decree is appealable, and the motion must be denied, with costs.

The other Justices concurred.