RICKMAN v. RICKMAN.

1. RECEIVERS — INSOLVENCY—ASSETS OF INSOLVENT—LIENS—CON-
FLICT OF LAWS—EQUITY.
    The appointment of a receiver, in proceedings in this State
    to dissolve and wind up a partnership that was insolvent,
    did not destroy the effect of a lien or preference obtained
    in Wisconsin prior to the filing of the bill by a subcon-
    tractor of the copartnership: nor did the receiver have
    the right or authority to take charge of the assets of
    the firm so affected by the subcontractor's lien, where
    no proceedings in bankruptcy had been instituted.

2. INJUNCTION—EQUITY.
    A bill of complaint to enjoin a creditor of the insolvent
    copartnership, who has garnished funds due to it, from
    proceeding to enforce his lien, will not lie in behalf of
    a subsequently appointed receiver.

3. SAME—DEBTOR AND CREDITOR—JUDGMENT CREDITORS' CLAIMS.
    Nor should an injunction be allowed which would deprive
    creditors of this State of their liens obtained in another,
    leaving creditors of foreign jurisdictions to exhaust a
    fund due to the insolvent by suits or garnishment pro-
    ceedings in their courts.

4. RECEIVERS—EFFECT OF APPOINTMENT—PARTNERSHIP, DISSOLU-
TION OF.
    After the receiver has been appointed, the creditor's right
    to sequester property by attachment or other method of
    obtaining priority is suspended.

5. SAME—PRIORITIES—MARSHALING ASSETS.
    Nor was a Michigan creditor in contempt of court for pro-
    ceeding in a foreign jurisdiction to take judgment, hav-
    ing commenced proceedings to obtain and enforce his
    lien as a subcontractor on a public building before any
    receiver had been appointed.

6. SAME—INTERNATIONAL LAW, PRIVATE—MECHANICS' LIENS.
    Where a subcontractor, who provided work, labor, and
    materials on a county building in the State of Michigan,
    brought suit in that jurisdiction under Wisconsin
    statutes, section 3328, authorizing judgment against the

county for the amount of the indebtedness due from the principal contractor, he obtained a lien on the funds due from the county to the contractor and was entitled to priority of payment over other creditors who commenced proceedings later to enforce their liens.

7. SAME—COURTS—CONFLICT OF LAWS.

The construction which the courts of Wisconsin place on their statutes should be followed in this State, in proceedings to dissolve a partnership wherein the rights of materialmen and subcontractors, who have obtained prior liens under Wisconsin law upon funds due the partnership, are in question.

8. SAME—LIENS—INSOLVENCY.

The receiver of a copartnership, appointed in proceedings for voluntary dissolution by mutual consent, was not entitled to possession of the fund, since he takes only the rights of the partnership as affected by claims and liens that would prevail against the firm if it attempted to assert rights to the fund.

9. SAME—LIENS.

A lien on the funds due from the county to the general contractor attached when suit was filed in Wisconsin by the subcontractor, and the latter was entitled to proceed with the suits and to hold the money subject to his lien.

10. GARNISHMENT—LIENS—PRIORITY.

It is a general rule that service of process in garnishment creates a lien on the property of the principal defendant, entitling plaintiff to hold such property for the satisfaction of his claim, and it is so recognized in Wisconsin.

11. PARTNERSHIP—PROCESS—SERVICE—SUBSTITUTED SERVICE.

Service of process on one of the copartners in Wisconsin was sufficient to secure a valid lien on the fund which belonged to the partnership.

12. JUDGMENT—RECEIVERS—PARTNERSHIP.

A judgment in Wisconsin, based on service of process upon one partner, in proceedings commenced before the appointment of a receiver of the firm assets, bound the receiver, being conclusive on the parties to the action and their privies.

13. CONFLICT OF LAWS—PRIVATE INTERNATIONAL LAW—COMITY.

The exception to the rule of comity between courts of dif-

ferent States whereby citizens of the forum are protected as against residents of another State, *held*, not to be involved.

Appeal from Kalamazoo; Knappen, J. Submitted January 12, 1914. (Docket No. 57.) Decided April 7, 1914.

Bill by Arthur W. Rickman against Alfred G. Rickman and others for the voluntary dissolution and winding up of George Rickman Sons' Company, a copartnership. From a decree for claimant Thomas M. Robinson, the Michigan Trust Company, receiver, appeals. Affirmed.

*Alfred J. Mills* and *Clapperton, Owen & Hatten,* for appellant.

*Floyd A. Wilson,* for appellee.

STONE, J. This case is here upon the appeal of the Michigan Trust Company, receiver, in the special matter of the claim of Thomas M. Robinson. In the statement and consideration of this case the dates of the several steps and proceedings are important.

On September 27, 1910, a bill was filed in the circuit court for the county of Kalamazoo, in chancery, by the above-named complainant, against the above-named defendants, who were the other copartners of George Rickman Sons' Company, for the dissolution of said copartnership and an accounting. On the same day the following consent order, duly entitled, was made by the said court:

"*First.* That the Michigan Trust Company, a Michigan corporation, having its principal business office at the city of Grand Rapids, Mich., and being authorized by law to act as such, be and is hereby appointed temporary receiver of all and singular the assets and property of said copartnership firm, with full power and authority to take possession of each, every, and all thereof, to conserve and control the

same, to manage and conduct the business heretofore carried on by said copartnership, to collect and receive the moneys due and owing to said copartnership or to said receiver and out of said receipts to pay the expenses of prosecuting said business, of maintaining and conserving the properties of said firm and such dividends to the creditors of said copartnership as the court, from time to time, shall direct, and such receiver shall have authority to buy such material as may be necessary in the usual course of trade to carry out the purposes of its appointment, and said receiver shall also have all the usual powers of a receiver appointed by a court of chancery in partnership cases.

\* \* \* \* \*

"*Third*. It also appearing to the court that the copartnership, as part of its assets, has certain uncompleted contracts for public and private buildings, which it is for the interest of all concerned to complete and finish. It is further ordered that the receiver be and is authorized and empowered to enter upon the completion of said contracts and for that purpose to use any and all money or funds coming into its hands from the copartnership, or from said contracts, to that end until the filing of the report required by this order, and the further order and direction of this court, and in the meantime to borrow upon the faith of the property of said copartnership temporarily of such sums of money as it may find to be absolutely necessary for said purpose.

"*Fourth*. All moneys borrowed by said receiver pursuant to this order shall be evidenced and secured by receiver's certificates approved by this court as to the form thereof.

"*Fifth*. The receiver shall proceed to make an accurate inventory of the assets and effects of said copartnership and notify the creditors, so far as it shall be able to ascertain same, of the pendency of this suit and its appointment to said receivership. The receiver shall also examine into the condition of all of said contracts, and within 30 days after the entry of this order file with this court the said inventory, a list of the creditors of said copartnership and the amount of their demand, as claimed by them respectively, so far as the same can be ascertained by it, and also a full report showing the situation and con-

dition of the copartnership assets, the business carried on by it, the said contracts, and make such recommendations to the court concerning same and the future conduct, management, and disposition of same as it shall deem or be advised is necessary and proper to give the court and all concerned detailed information of the assets and condition of said copartnership and its property and assets, to the end that the court may then make such further or other order in the premises as it may deem to be necessary or expedient.

"*Sixth.* The appointment of said receiver shall take effect on the filing of an acceptance, in writing, by the said Michigan Trust Company, containing an undertaking on its part for the faithful discharge of the duties of its appointment, and for the accounting of all moneys and effects received by it, as such receiver, and such appointment shall continue until the entry of the final decree in this cause, or until the further order of this court in the premises.

"*Seventh.* The written consent of the said defendants to the appointment of said receiver and the entry of this order shall be filed with the register of this court.

"*Eighth.* The parties to this cause, or any other party, or parties, in interest, are given leave to apply to the court at any time for any other or further grant of power to the said receiver, or for such other order respecting the conduct of said receivership as circumstances may render advisable or necessary."

On the same day an acceptance of appointment, duly entitled, was filed by the Michigan Trust Company.

It appeared in evidence at the hearing that all creditors of said copartnership were immediately notified by the following letter of the appointment of the receiver:

"GRAND RAPIDS, MICH., Sept. 29, 1910.
"TO THE CREDITORS OF GEORGE RICKMAN SONS' COMPANY, OF KALAMAZOO, MICHIGAN.
"*Sirs:*

"The undersigned was on the 27th day of September, 1910, appointed temporary receiver of the assets of George Rickman Sons' Company, a partnership, by the circuit court for the county of Kalamazoo, Michi-

gan, in a suit brought by Arthur W. Rickman, one of the partners, against the remaining members of the firm of George Rickman Sons' Co., for a dissolution of partnership.

"We have accepted the trust, and have taken possession, but have not had opportunity to take an accurate inventory of the assets. We will immediately give the affairs of this firm a thorough investigation, and expect to advise creditors of the exact condition in as short a time as possible.

"The assets and liabilities as stated by the members of this firm to us, are as follows:

"The Rickman Hotel, at Kalamazoo, which is an eight-story hotel erected about two years ago, now the best hotel in Kalamazoo, and enjoying a very profitable business, valued at $135,000 to $150,000. Two large flat buildings in Kalamazoo, valued at $25,000 to $28,000.

"In addition to this, they claim amounts due on building contracts completed and nearly completed, about $74,000. Also other general accounts receivable, of which we have not had definite statement.

"As against these assets, there are real estate mortgages of $62,000, general unsecured liabilities of about $80,000, and amount necessary to complete contracts estimated at $30,000. Upon these figures, which we have not yet been able to verify, this firm would seem to be amply solvent, and it is claimed that their present embarrassment is entirely due to the action of certain creditors in endeavoring to force claims by lien proceedings against the buildings under construction, and to the fact that their other assets are such as not to be immediately available in their business, and the action taken has been with the idea of obtaining financial assistance necessary to enable them to complete their contracts and realize the amounts due thereon.

"It will be of great assistance to us in our investigation if creditors will send us itemized statement of their claims, so that we can ascertain exactly the amount of liabilities. This statement need not be sworn to.

"If any of the indebtedness is in the form of promissory notes, we would like a statement of these notes, with date of execution and of maturity.

"We trust that you will assist us in this matter, and that we may promptly hear from you.
"Very respectfully,
"THE MICHIGAN TRUST COMPANY,
"By GEORGE HEFFERAN, Secretary."

The firm of George Rickman Sons' Company consisted of four members (the parties to this suit). It was the principal contractor in the year 1910 for the erection of a courthouse for Oneida county, at Rhinelander, Wis., and also for the erection of the Owosso postoffice at Owosso, Mich.; the Holland city hall at Holland, Mich; a high school building at Chelsea, Mich.; and the Masonic Temple at Flint, Mich. The claimant, Thomas M. Robinson, was one of the subcontractors in the construction of said courthouse at Rhinelander, Wis., and was also one of the subcontractors in the construction of the above-mentioned buildings in Michigan.

The following subcontractors for the building and construction of the said courthouse brought suit in the circuit court for said Oneida county, against above-named complainant and defendants as copartners and said Oneida county jointly, the time of the several proceedings in each of the said suits being as follows:

"(a) Saginaw Sheet Metal Works, a Michigan corporation. Summons issued August 25, 1910, served upon said Oneida county at 4:30 p. m. on August 25, 1910; served upon balance of defendants by personal service upon said Arthur Rickman, one of the said defendants, at Rhinelander, said Oneida county, August 25, 1910. Judgment was rendered November 1, 1910, against the said above-named complainant and defendants composing said copartnership, and against said Oneida county, in the sum of $1,250.72 damages and $29.80 costs. Judgment and costs ($1,280.52) paid plaintiff November 15, 1910.

"(b) Thomas M. Robinson, of Michigan. Summons issued August 25, 1910, and served upon said Oneida county at 4:21 p. m., August 25, 1910, and

upon the balance of said defendants by personal service upon said Arthur Rickman, at Rhinelander, said Oneida county, on August 25, 1910. Judgment was rendered November 1, 1910, against said above-named complainant and defendants composing said copartnership and against said Oneida county, in the sum of $2,965.26 damages, and $28.82 costs. Judgment and costs ($2,994.08) paid plaintiff (above claimant) November 15, 1910.

"(c) Union Foundry Works, an Illinois corporation. Summons issued August 25, 1910; served upon said Oneida county at 4:22 p. m., and upon the balance of said defendants by service upon said Arthur Rickman, personally, at Rhinelander, said Oneida county. Judgment was rendered November 1, 1910, against said above-named complainant and defendants, composing said copartnership, and against said Oneida county in the sum of $2,406.51 damages and costs.

"(d) Scott-Taylor Company, a Wisconsin corporation, of Ashland, Wis. Summons issued August 25, 1910, and served upon said Oneida county at 4:23 p. m. on said day, and upon the balance of said defendants by personal service upon said Arthur Rickman, at Rhinelander, said Oneida county. Judgment was rendered November 1, 1910, against said complainant and defendants, composing said copartnership, in the sum of $909.37 damages and costs, and against said Oneida county in the sum of $307.86.

"(e) Wheeler-Blaney Company, a Michigan corporation. Summons issued November 24, 1910; served upon said Oneida county at 3:45 p. m. on said day; no service being made upon balance of defendants. No further steps taken to secure judgment."

At the time (August 25, 1910) these suits were commenced, there was due said copartnership from said Oneida county, on estimates for work done on said courthouse, the sum of $6,998.97.

The sections of the statutes under which the suit of claimant, in Wisconsin, was brought are sections 3328 and 2884 of the Laws of Wisconsin, Revision of 1898, and are as follows:

"SEC. 3328. Any subcontractor who has done work

or labor, or furnished materials to any principal contractor for the construction, repair or removal of any building or machinery for any county, town, city, village, or school district, may maintain an action therefor in the county in which such work, labor or materials were done or furnished, against such principal contractor, and such county   *   *   *   jointly, for the recovery thereof; but no judgment shall be rendered against any defendant therein, other than such principal contractor for any amount greater than the amount due from it to such principal contractor at the time of the commencement of such action. Such county   *   *   *   when served with the summons in any such action, may give notice thereof to such principal contractor, and on so doing, need not further defend such action. On rendition of judgment in such action against such principal contractor, the court may also render judgment against such county   *   *   * for the amount due from it to such principal contractor, at the time of the commencement of such action, or to a sufficient amount to pay the judgment recovered against the principal contractor, and payment thereof shall discharge its indebtedness to such principal contractor to the amount so paid. Such principal contractor may, in such action, file in the court in which it is commenced, a bond, in such sum and with such sureties as the judge of such court shall approve, conditioned for the payment of any judgment that may be rendered in such action, and thereupon the liability of such county   *   *   *   hereunder, shall cease, and the action as to it shall be discontinued without costs to it."

"SEC. 2884. When the action is against two or more defendants, and the summons is served on one or more, but not on all of them, the plaintiff may proceed as follows:

"1. If the action be against several persons, jointly indebted upon a contract, he may proceed against the defendant served, unless the court shall otherwise direct, and, if he recover judgment, it may be entered in form against all the defendants thus jointly indebted, so far only as that it may be enforced against the joint property of all, and the separate property of the defendant served, and, if they are subject to arrest, against the persons of the defendants served.

"2. In any action against defendants severally liable, he may proceed against the defendant, or defendants, served, in the same manner as if such defendant or defendants were the only parties proceeded against.

"3. If all the defendants have been served, judgment may be taken against any, or either of them, severally, when the plaintiff would be entitled to judgment against such defendant or defendants, if the action had been against them, or any of them, alone."

An exemplified copy of the judgment rendered in Wisconsin in favor of said claimant was offered and received in evidence, and is as follows:

"State of Wisconsin, In Circuit Court, Oneida County.

"Thomas M. Robinson,
    "Plaintiff,
        "v.

"Alfred G. Rickman, Arthur W. Rickman, Peter L. Rickman, and William B. Rickman, Copartners, Doing Business under the Firm Name of George Rickman Sons' Company, and Oneida County,
    "Defendants.

"The summons in this action having been personally served upon the above-named defendants, Arthur W. Rickman and Oneida county, on the 25th day of August, 1910, and due proof of such service having been made and filed, and it appearing by proof duly made and filed that after due diligence the above-named defendants Alfred G. Rickman, Peter L. Rickman, and William B. Rickman cannot be found and have not been served, and it further appearing by the affidavit of H. F. Steele, attorney for the plaintiff, that no demand for copy of the complaint, and no answer, demurrer, or notice of appearance, has been served upon or received by him from or in behalf of said defendant Arthur W. Rickman, and that neither said Arthur W. Rickman nor the above-named defendants Alfred G. Rickman, Peter L. Rickman, and William B. Rickman, or any or either of them, have appeared in this action; and this action having come on for trial at this regular term of court on this 1st day of November, 1910, upon the answer of the above-named defendant, Oneida county, H. F. Steele appearing for

the plaintiff and S. S. Miller for the defendant; and it appearing from the complaint herein, which is duly verified, that the above-named defendants Alfred G. Rickman, Arthur W. Rickman, Peter L. Rickman, and William B. Rickman, as principal contractors, are jointly indebted to the plaintiff herein, as subcontractor, upon the contracts set out in said complaint, and in the amount demanded in same, and that judgment should be rendered in form against all of the defendants last named, and the said defendant Oneida county having, by its answer herein, admitted its indebtedness to the said defendants Alfred G. Rickman, Arthur W. Rickman, Peter L. Rickman, and William B. Rickman jointly, at the time of the commencement of this action, as principal contractors, upon its contract with same, set out in the complaint, in the amount of $6,988.97, and not having denied any of the material allegations of said complaint: Now, on motion of H. F. Steele, attorney for the plaintiff, it is ordered and adjudged that the said Thomas M. Robinson, plaintiff, do have and recover of the said defendants Alfred G. Rickman, Arthur W. Rickman, Peter L. Rickman, and William B. Rickman, and the defendant Oneida county, the sum of $2,965.26, damages, and the sum of $28.82 costs, making in all the sum of $2,995.08; this judgment to be enforced only against the joint property of said defendants Alfred G. Rickman, Arthur W. Rickman, Peter L. Rickman, and William B. Rickman, and the separate property of said defendants Arthur W. Rickman and Oneida county.

"Dated November 1, 1910.

"By the Court:

"A. H. REID, Circuit Judge."

There was no order issued by the circuit court of the county of Kalamazoo, in chancery, in this suit restraining the claimant, or other creditors, from maintaining the suits in Wisconsin. No ancillary receivership proceedings were sought to be brought in said Oneida county, and no receiver, for the said complainant and defendants, as such copartners, or for the property of said copartnership, was appointed in said county or State. No action was taken by said

copartners, or by the said receiver, to stay the proceedings in said causes in Oneida county, or to prevent the rendition of said judgments.

On November 10 or 11, 1910, and prior to the payment of said judgments in Wisconsin, the attorney for the receiver, and for Henry G. Dykehouse, one of the creditors, went to Rhinelander and there saw H. F. Steele, who was attorney for all of the claimants, who had secured judgments against the Rickman Company and Oneida county jointly. He objected to any payments being made at that time to the judgment creditors by the county of Oneida, to Mr. Steele, and also Mr. Miller, who was a member of the Building Committee of the Board of Supervisors, and at that time served upon Mr. Steele the following notice:

"To H. F. Steele, Rhinelander, Wisconsin, attorney for the Saginaw Sheet Metal Works, Thomas M. Robinson, the Union Foundry Works and Scott-Taylor Company, and all persons represented by you are hereby notified, in behalf of the Michigan Trust Company of Grand Rapids, Michigan, which was on the 27th day of September, 1910, duly appointed receiver of Arthur W. Rickman, Peter L. Rickman, William D. Rickman and Alfred G. Rickman, as copartners, doing business under the name of George Rickman Sons' Company, by the circuit court for the county of Kalamazoo, Kalamazoo county, State of Michigan, for and in the interests of the creditors of said firm and on behalf of Henry G. Dykehouse as a creditor of the said firm of George Rickman Sons' Company, that said firm of George Rickman Sons' Company, is and was at and before the commencement of the suits hereinafter set forth insolvent and had sufficient assets only to pay a percentage upon the debts of said copartnership; and that whereas, on, to wit, the 25th day of August, 1910, suits were commenced in the circuit court for the county of Oneida, State of Wisconsin, one by the Saginaw Sheet Metal Works, one by the Union Foundry Works, one by Thomas M. Robinson, and one by the Scott-Taylor Company against said copartnership, George Rickman Sons' Company and Oneida county, in which said several actions

judgments were thereafter rendered on the 21st day of October, 1910, and the 1st day of November, 1910, said judgments were docketed by the said clerk of said court on the 3d day of November, 1910, as will appear by the said records and files in said court: You are therefore notified that pending the filing of a petition in bankruptcy in the district court of the United States for the western district of Michigan, southern division, and pending the adjudication of George Rickman Sons' Company to be bankrupt, any payments made by said Oneida county, to said judgment creditors and plaintiffs, will be considered void and will be void as preferences under the bankruptcy act of the United States and that appropriate actions will be maintained by the receiver in bankruptcy and by the trustee in bankruptcy to set aside and declare void all such payments and to recover the amount of said payments from said judgment creditors and plaintiffs and to recover the balance from said Oneida county upon its contract with said firm of George Rickman Sons' Company for the construction of a courthouse at Rhinelander, Wisconsin, out of which the consideration of said claims of said judgment creditors arose."

The said attorney for the receiver represented to the parties addressed in the above notice that unless these judgments were vacated, bankruptcy proceedings would be brought. This statement was made on behalf of the receiver and on behalf of Mr. Dykehouse, the creditor, whom he represented.

Bankruptcy proceedings had not been commenced, and in fact were never brought, but had been discussed at that time, and upon his return to Grand Rapids he wrote Mr. Steele the following letter; payment of the claimant's judgment, however, had been made on November 15, 1910, by the county of Oneida:

"Nov. 16, 1910.

"MR. H. F. STEELE,
    "Attorney at Law,
        Rhinelander, Wis.
"*Dear Sir:*
    "Since my return home I have further considered

the matter of the claims in the suits of Thos. M. Robinson, Union Foundry Works and Scott-Taylor Co. upon their judgments at Rhinelander. It seems to me that there can be little question but that these judgments do not constitute such a lien as to give them a preference in bankruptcy. While I am ready to file a petition if these creditors stand on their claims I would prefer not to have this additional expense if after conferring with your client you would be willing to release these judgments, and shall therefore wait for your communication in regard to their intention in the matter of these suits. Rather than have the expense of litigation over the matter, as I stated to you at Rhinelander, I would be willing to make some concession. In view of the fact that the affairs of the estates are still in an unliquidated condition, so that we cannot definitely determine the exact amount of assets and liabilities, it would be difficult at this time to make a definite agreement in this regard. If your clients would be willing to wait for thirty days until the affairs of the estate would be worked out more fully we would then be in a better position to determine just how much of a concession we would be willing to make on the settlement of these matters without further litigation. Will you not consider this matter fully and write me at as early date as possible, letting me know your determination in this regard.

"Yours very truly,
"CHARLES M. OWEN."

On January 20, 1911, a decree was entered in the said cause. It found that said copartnership had been engaged in the business of building, and in the management of a hotel at Kalamazoo, known as the Hotel Rickman; that there had been no formal written articles of copartnership; that said copartnership was not agreed to be continued for any definite time, but was terminable at any time at the will of either of said copartners, and that said copartnership was by said decree dissolved; that the interests of said copartners were equal, each having an undivided one-fourth interest in said firm and its assets; that inasmuch as it was necessary in the first instance to

pay the firm creditors, the court did not, at that time, fix or determine the equities of the copartners between themselves, in the assets of said firm, but ordered that either of said copartners should be at liberty to apply to the court to determine such equities as between themselves, in any surplus that should remain for distribution. From the proofs it appeared that the indebtedness of said firm was then in excess of $200,000, and that it was desirable, in the interest of creditors, to make a sale of the assets of said firm and to liquidate said assets for the purpose of paying the indebtedness of said firm, or such dividends thereon, as it might be possible to pay after satisfying the expenses of the receivership and of the management and conservation of the firm assets and business.

The Michigan Trust Company was by the decree appointed receiver of all and singular the assets and properties of said firm, with full power to take possession thereof, and conserve and control the same, to manage and conduct the business theretofore carried on by said firm, to manage and conduct the operation, and to continue the business of the Hotel Rickman, and to make such agreements and incur such expense as should be necessary for the management, control, and operation of said property, to collect and receive the moneys due or owing to said firm, or to said receiver, or to the temporary receiver theretofore appointed, and out of said receipts to pay expenses of prosecuting the business and management of the several properties of said firm, and such dividends to creditors as the court might, from time to time, direct, and that said receiver should also have all the usual powers of a receiver appointed by a court of chancery in partnership cases.

The appointment was made in succession to the appointment of a temporary receiver, contained in the order made on September 27, 1910, and it was ordered

that the receiver thereby appointed should succeed to all and singular the rights theretofore possessed by said temporary receiver, and should take and be vested with the title to the choses in action, which had theretofore accrued to said temporary receiver in the conduct of the business carried on by it, with power to confirm and ratify such agreements, with reference to the management and control of said assets and property as should have been entered into by said temporary receiver, and to carry out and perform said agreements; the appointment thereby made was to take effect on the filing of an acceptance in writing by the Michigan Trust Company, containing an undertaking on its part for the faithful discharge of the duties of its appointment, and to account for all moneys and effects received by it as such receiver, and such appointment was to continue until the further order or decree of the court.

The creditors of said firm were, by said decree, required to exhibit their demands by filing proofs of their respective claims in the office of the register of the court. It provided that said receiver should, within 10 days from the date thereof, give notice thereof by mail to each creditor of said firm known to said receiver, and within 90 days thereafter should make and file with the court proof of service of such notice; the notices served should require all creditors to prove their debts and claims within 90 days from the date thereof, by a proof of claim to be filed in said register's office, or, in default thereof, the receiver would proceed to distribute said estate as soon as practicable thereafter, without reference to claims not proved when dividends were paid; notice requiring the creditors of said firm to exhibit their demands by filing proofs thereof in said register's office within the period aforesaid should also be given by said receiver by publishing such notice once a week for six

successive weeks in the Kalamazoo Evening Telegraph.

Said decree also required that a list of said creditors (so far as known to said receiver), should be filed by it, with proof of service of the notice given by mail as aforesaid; that every proof of claim filed as aforesaid should be itemized as sworn to, and should state the actual amount unpaid and owing, the actual consideration thereof, when the same was contracted, and when the same had or would become due, whether any and what payments had been made thereon, that the sum claimed was justly due from said firm to the claimants, and that the claimant had not, nor had any other person for his use, received any security or satisfaction whatever, other than that by him set forth.

The decree provided that the receiver, or either of the parties to the cause, might contest any claims filed as aforesaid; that every creditor desirous of having a claim filed by any other creditor contested might, by writing, request the receiver to contest such claim, whereupon it should be the duty of said receiver to investigate, and, if in its opinion it was deemed best so to do, such contest might be made in such manner as should be thereafter determined by the court.

. The receiver was directed to cause an inventory of the property coming to its hands to be made, with an appraisement thereof, by two disinterested appraisers to be chosen by it.

By the decree the parties to the cause, said receiver or any other party in interest, were given leave to apply to the court at any time for any other or further grant of power to the receiver, or for such other or further order respecting the conduct of said receivership, or the properties embraced therein, as circumstances might render advisable.

In compliance with said order the claimant filed

proof of his claim, showing balance due on contract
for material furnished for normal school building at
Kalamazoo; for material furnished for high school
building at Chelsea, Mich.; for balance for material
furnished for city hall building at Holland; balance
for work, labor, and material furnished for Owosso
postoffice; balance for work, labor, and material
furnished for Masonic temple, Flint, Mich., with in-
terest in each instance; also balance on unpaid note
given April 24, 1910, to apply on the Holland city
hall contract, and credited as payment thereon, with
interest at 6 per cent. After the proof of claim was
filed, various credit items were allowed by claimant,
and payments were made to claimant. At the time of
the hearing the amounts due were as follows:

| | |
|---|---:|
| Balance due on Holland city hall contract, with interest thereon from March 1, 1910.. | $1,055 84 |
| Balance due on Chelsea high school contract, with interest thereon from March 1, 1910.. | 465 32 |
| Balance due on said unpaid note, with interest due as shown on said note.......... | 500 00 |
| Total............................... | $2,021 16 · |

The record further shows that the list of claims
filed by creditors shows that on accounts amounting
to between $4,000 and $5,000 no interest whatever
was claimed; that on other items interest was claimed
from various times. One or two items of interest was
claimed from 1908. The majority of the items bore
interest from 1910. On $16,000 of the claims interest
was claimed from 1912. It further appeared that said
firm was insolvent, that the receiver, under the direc-
tion of the court, has declared and paid a dividend of
20 per cent. to creditors, and that no more than an
additional dividend of 20 per cent. will be realized and
be available for distribution among creditors.

The objection of the receiver, appellant, to the al-
lowance of the claim of claimant filed in said cause
was as follows:

"It objects to the claim of Thomas M. Robinson, who has filed a claim herein for $4,233.03 for the reason that after the appointment of the receiver herein, and with full knowledge thereof, said Thomas M. Robinson recovered a judgment against said copartnership and against the county of Oneida, Wis., for the sum of $2,994.08, on the 1st day of November, 1910, at which time said Thomas M. Robinson was a creditor of said copartnership; that afterwards said Thomas M. Robinson received from said county of Oneida the sum of $2,994.08, due from said county of Oneida to said copartnership, and thereby received a preference over the other creditors, whereby it is inequitable that said Thomas M. Robinson should share in the dividends declared by this estate until the amount of dividends declared and distributed in this estate on the total amount of the claim of said Thomas M. Robinson, including said judgment, should amount to said sum of $2,994.08."

The matter came on to be heard upon the petition of the receiver, setting forth its objections to various claims of creditors which had been filed, including that of claimant, and asking for an order setting a date of hearing of said claims after due notice to the claimant. Such hearing was finally had on December 28, 1912, and an order was made by the court below allowing the claim of said claimant in full for the whole amount claimed by him against said estate at the sum of $2,021.16, and an order was made February 19, 1913, of which the following is the substance, after entitling the court and cause, to wit:

"In the Matter of the Claim of Thomas M. Robinson and Saginaw Sheet Metal Works.

"After hearing the evidence in support of and against the claim of said claimants, it is hereby ordered, adjudged, and decreed that each of said claimants is entitled to share in any dividends declared, without any deductions being made for payments received by them from said fund under said judgments rendered in Wisconsin; each of said claimants is entitled to and is hereby allowed a solicitor fee of $25 and costs amounting to $10 each, in said

matter. The amount of the claim of Thomas M. Robinson should be $2,021.16, * * * with interest as shown in the proofs of the respective claimants."

Later, and on the 17th day of March, 1913, a decree was made and filed in said cause, which contains the following language:

"*First.* That the amount of the claim of said Thomas M. Robinson herein is fixed' and determined by this court in the sum of $2,021.16, with interest thereon at the rate of 5 per cent. per annum on the sum of $1,055.84 from May 1, 1910, and on the sum of $465.32 from March 1, 1910, and with interest on said unpaid note of $500 at the rate specified in said note from the date thereof.

"*Second.* That the Michigan Trust Company, receiver, heretofore appointed in this cause, shall, from the funds in its possession as such receiver, pay to said claimant Thomas M. Robinson a dividend on his claim of equal percentage to that paid other claimants herein whose claims were not contested.

"*Third.* That the said receiver shall, from the funds now or hereafter coming into its possession as such receiver, pay to said claimant Thomas M. Robinson a dividend on the interest due on his claim equal in percentage to that paid under the second paragraph herein.

"*Fourth.* That the said receiver shall, from the funds in its possession, or hereafter coming into its possession as such receiver, pay to the said claimant Thomas M. Robinson, a solicitor fee of $25 and costs in the sum of $10."

Upon the hearing the attorney for claimant was called as a witness by the receiver, and gave certain testimony relating to his information concerning the financial condition of the firm at and before the time suit was begun in Wisconsin. His testimony tended to show that, while a notice had been served upon the Wisconsin attorney representing the claimant, as above set forth, in which it was stated that at and before the commencement of the suits in Wisconsin said firm was insolvent, and had sufficient assets only

to pay a percentage upon the debts of said copartnership, he made investigation and was unable to verify such statement, as the assets and liabilities of the firm at that time were not known, but were by him supposed to be sufficient to pay in full the debts of the copartnership. From which order and decree, so far as they allowed the claim of said Robinson, the receiver has appealed to this court.

By its brief the appellant and receiver claims without conceding the validity of the judgment obtained by claimant in the Wisconsin court, but assuming for the purposes of argument that it was regular, that the claimant is not entitled to the relief he prays, and that he should receive no dividends until the total dividends in said estate would on his claim, including said judgment, exceed $2,994.08. The appellant's argument, contained in the brief of its solicitors, proceeds upon the following propositions:

(1) The receiver could have enjoined the Michigan creditors from proceeding to judgment in the Wisconsin court; (2) the claimant Robinson is in contempt, and does not come into court with clean hands; (3) as to whether a lien existed under the Wisconsin statute; (4) as to whether a lien on this fund was created by the Wisconsin statute from the fact of its being in the nature of a garnishment; (5) substituted service; (6) the rule of comity is subject to the rule that the courts of each State will first protect the citizens of that State, as against residents of another State.

1. It is the claim of appellant that, by virtue of its appointment as receiver, it was vested with the right, as against all the creditors of the firm of George Rickman Sons' Company, resident of the State of Michigan, to take possession of and administer, under the direction of the court, all the assets and property of that firm located in the State of Michigan, or elsewhere, except as against the rights and equities of creditors resident in States other than Michigan, in

which the same might be situated. It is a significant
fact that should not be lost sight of that no bankruptcy
proceedings have ever been instituted against said
firm; that as early as the 25th day of August, 1910,
suit had been commenced by the claimant against
said firm and Oneida county in the circuit court of
Oneida county, State of Wisconsin, and that service
was had on that day upon Arthur W. Rickman and
Oneida county.

If it shall turn out that the commencement of this
suit operated as a garnishment of the fund in Wiscon-
sin, and that such garnishment operated as a lien in
favor of the claimant upon that fund, then we do not
think the authorities cited by appellant upon this
proposition are applicable here. The Michigan cases
cited by counsel, of *Butler* v. *Wendell,* 57 Mich. 62
(23 N. W. 460, 58 Am. Rep. 329), and *Cohen* v. *Order
of the Iron Hall,* 105 Mich. 283 (63 N. W. 304), are
readily distinguished from the instant case, in the
event that claimant, by the above-mentioned proceed-
ings, obtained a lien upon the fund in Wisconsin.

Counsel also call attention to the case of *Gilman* v.
*Ketcham,* 84 Wis. 60 (54 N. W. 395, 23 L. R. A. 52,
36 Am. St. Rep. 899). That case is readily distin-
guished from the instant case for many reasons. In
that case there was a voluntary proceeding for the
dissolution of a corporation of another State, and a
receiver had been appointed by a court of that State,
and the creditors had been enjoined from prosecuting
actions against the corporation. The Wisconsin court
said:

"The situation, in brief, is that after the plaintiff
had been enjoined, by a competent court of the jur-
isdiction in which he resided, from bringing any
action against the corporation, * * * and after
an adjudication absolutely dissolving the corporation
had been made, and after the title to its property,
effects, and credit had been vested in the claimant

as such receiver, the plaintiff came into the circuit court of this State, and commenced an action to recover his demand against a dissolved corporation."

We are dealing here with a case in which the claimant had commenced his suit more than a month before the bill of complaint was filed in this cause. It should be noted that the bill of complaint was filed to dissolve a copartnership and for an accounting, and not to wind up a corporation; also that no injunction had been issued, or action taken by the receiver to interfere with the progress of the suit in the State of Wisconsin. The claimant had in no way been made a party to the chancery suit commenced in the Kalamazoo circuit. So far as the record shows, at that time the copartnership was supposed to be solvent, and there seems to have been no reason why the claimant might not proceed to enforce his lien in the State of Wisconsin upon the money there intended for the payment of the claims. Under such circumstances, we do not believe the receiver could have enjoined the Michigan creditors from proceeding to judgment in the Wisconsin court. *Merchants & Manufacturers Nat. Bank* v. *Kent Circuit Judge*, 43 Mich. 292-297 (5 N. W. 627) ; *Baldwin* v. *Wayne Circuit Judge*, 101 Mich. 119-134 (59 N. W. 432) ; *Baldwin* v. *Wayne Circuit Judge*, 101 Mich. 432 (59 N. W. 669).

An injunction should not issue at the suit of a receiver to enjoin a creditor, who has garnished funds of the corporation, from proceeding with his suit.

If claimant had obtained a valid lien on the fund, it was not dissolved by the filing of the bill and the appointment of a receiver, but may be enforced.

It will be noted, also, that there were a number of suits pending in the Wisconsin court, including Michigan, Illinois, and Wisconsin creditors. The result of an injunction would have been to deprive the Michigan creditor of his remedy and lien there, leaving the field open for the Illinois and Wisconsin creditors to

exhaust the fund, for, as it turned out, the fund was not large enough to pay all of the claims in full, but the judgments were paid in the order in which the suits were begun. Under such circumstances an injunction would not have been issued. *Washington Lodge* v. *Frelinghuysen,* 138 Mich. 350-355 (101 N. W. 569); *Campau* v. *Film Co.,* 159 Mich. 169-172 (123 N. W. 606).

It seems to us that the receiver bases its entire theory on the assumption that it made no difference whether the suits in Wisconsin were begun prior to the appointment of the receiver, or subsequently. We think there is a marked difference, and that a different rule should be applied. This court has held that, *after* the appointment of a receiver for an insolvent, the right of a creditor to sequester property by attachment, and thus gain priority, is suspended. *Butler* v. *Wendell,* 57 Mich. 62 (23 N. W. 460, 58 Am. Rep. 329). There the assignment was made prior to the commencement of the garnishee proceedings, and was valid in the State where made. See, also, *Cohen* v. *Order of the Iron Hall,* 105 Mich. 283 (63 N. W. 304). There the receiver was appointed in Indiana, and on the same day suit was commenced in Michigan and an ancillary writ of garnishment was issued. This court said, at page 288 (63 N. W. 306):

"If it be conceded that the prior appointment of a receiver by the Indiana court would have relegated plaintiff to that court, it does not appear, under either rule, that such appointment preceded the commencement of the present suit. We are of the opinion that under the rule laid down in *Granger* v. *Circuit Judge,* 27 Mich. 406 [15 Am. Rep. 195], the pendency of the proceedings in the Indiana court did not deprive plaintiff of his remedy at law."

2. We do not agree with appellant's contention that claimant Robinson was in contempt of court in proceeding to take his judgment in the Wisconsin court.

At that time it did not appear that the copartnership was insolvent, nor had any legal steps been taken to invoke bankruptcy proceedings, or to restrain claimant from proceeding to enforce his lien.

This court held in *Baldwin* v. *Wayne Circuit Judge,* 101 Mich. 119-134 (59 N. W. 432), that proceedings for contempt are not appropriate for the trial of issues involving a right to a fund as between receiver and a garnishee of the fund. See, also, Alderson on Receivers, §§ 211-219.

The case of *Campau* v. *Driving Club,* 130 Mich. 417 (90 N. W. 49), is readily distinguished from the instant case.

3, 4. The third and fourth propositions may well be considered together. We agree with the contention of the claimant that the commencement of the suits in Wisconsin by the four subcontractors gave each a lien on the fund then owing by the county to the copartnership, with priority of payment in the order of time when such suit was begun. Thus the supreme court of Wisconsin has interpreted the statute which we have already quoted, and has held that the action under this law is equivalent to a garnishment proceeding. We think that the commencement of such actions gave the plaintiffs therein priority over subcontractors and creditors of the principal contractor who might begin their actions later. *James* v. *Davidson,* 81 Wis. 321 (51 N. W. 565). In the case last cited that court said:

"These actions, under section 3328, Revised Statutes, are the equivalents of garnishee actions brought by the same creditors of *Russell* v. *County"* —citing *Klaus* v. *Green Bay,* 34 Wis. 628, and continuing:

"The commencement of each such action gave the plaintiff therein priority over subcontractors and creditors of Russell who commenced their actions later. This plaintiff, being the first to bring an action, is entitled to be first paid out of the moneys adjudged

to have been due Russell from the county when the action was commenced."

In the suits of the four claimants in Wisconsin the Oneida circuit court carried out the same principle. The amount impounded was not sufficient to pay the claims of all four creditors who had filed suits. The judgments of these four creditors were paid in the order of time in which these suits were filed, and the Scott-Taylor Company, a Wisconsin corporation, being the last claimant to file suit, did not receive payment of its judgment in full from the partnership assets so impounded. The judgments not only established the fact that each claimant had a lien, with priority of payment in the order in which the suits were begun, but also that foreign creditors who commenced suit prior to the Wisconsin creditors were entitled to payment from the fund, even to the depletion of the fund, so that the local Wisconsin creditor did not receive payment of its judgment in full.

It is urged by appellant that the language of the statute is permissive only, in that it is said, "that a court may render judgment." The Wisconsin courts have held that the exercise of the statutory power which is permissive only in form is not discretionary where public interests or individual rights call for its exercise. *Brawley* v. *Mitchell*, 92 Wis. 671 (66 N. W. 799), citing many cases. This is also the general rule. See 2 Lewis' Sutherland Statutory Construction (2d Ed.), § 636, pp. 1149, 1150. This court should follow the construction placed upon these statutes by the Wisconsin courts. *Id.*, vol. 1, § 13, p. 22; 36 Cyc. p. 1104; Black on Interpretation of Laws, § 145, p. 381.

It should be remembered that in this case a bill was filed by one copartner for the dissolution of the partnership and an accounting from the other copartners. By consent a temporary receiver was ap-

pointed to carry on the business of the copartnership until the cause could be heard. Such receiver was not entitled to possession of the fund impounded, over a month before, by the suits commenced in Wisconsin. High on Receivers (4th Ed.), § 539, p. 704; *Weber* v. *Weber*, 90 Wis. 467 (63 N. W. 757).

"The receiver of a partnership takes only its rights, and consequently is affected by all claims, liens and equities which would prevail against the partnership if it were asserting its interest in the property." Alderson on Receivers (1905), p. 223.

The receiver takes only such title as the partnership had, subject to all valid or existing liens thereon. Alderson on Receivers (1905), p. 658.

Claimant having obtained a lien on the fund, the receiver is not entitled to possession of the same. *Baldwin* v. *Wayne Circuit Judge, supra; Brownson* v. *Roy*, 133 Mich. 617 (95 N. W. 710).

The doctrine is well stated in 23 Am. & Eng. Enc. Law (2d Ed.), pp. 1091-93, as follows:

"The appointment of a receiver for property does not affect pre-existing liens upon the property, or vested rights or interests of third persons therein. * * * A receiver, it is held, succeeds to only such right, title, and interest in the property as the individual or corporation for which he is appointed receiver had at the time the appointment was made. The receiver takes his title to the property subject to all the equities to which it was subject in the hands of the debtor"—citing many cases.

Where property of the debtor is subject to a lien prior to the time of commencement of receivership proceedings and appointment of receiver over all of debtor's property, the receiver is not entitled to possession of the property, and the lienor can enforce his lien as against the property.

An abundance of authority may be cited in support of this doctrine outside of this State. We have already cited sufficient authority upon the subject.

That the lien attached on the filing of the suits in Wisconsin there can be no question under the authorities which we have cited. The receiver in Michigan was appointed subsequent to the commencement of the Wisconsin suits, but prior to the time of judgment. Under such circumstances the plaintiffs in the Wisconsin suits were entitled to proceed with these suits and hold the fund subject to their liens. The money impounded in Wisconsin may be said to have been a fund for the satisfaction of such liens. *Baldwin* v. *Wayne Circuit Judge, supra.* The same rule is laid down in the case of *Ross* v. *Titsworth,* 37 N. J. Eq. 333.

It will be noted that in the case we are considering the court below did not make a decree dissolving the copartnership and ordering creditors to file their claims until January 20, 1911. In the meantime claimant's Wisconsin judgment had been paid. Until this decree was entered it cannot be said that the claimant was in any sense a party to the litigation, or affected by it in so far as the proceedings in Wisconsin were concerned.

.The doctrine of the Wisconsin court that the service of garnishee process creates a lien upon the property of the principal defendant in the hands of the garnishee defendant, entitling the plaintiff to hold such property for the satisfaction of his claim, is the general doctrine. In addition to the cases already cited, we may cite that of *Bethel* v. *Judge of Superior Court,* 57 Mich. 379 (24 N. W. 112) ; 20 Cyc. p. 1063; Rood on Garnishment, §§ 180, 192, 193, 194.

5. **Substituted Service.** The receiver contends that as personal service was had on only one of the copartners in Wisconsin, and no service was had on the other copartners, the judgment obtained in Wisconsin against the copartnership property will not be recognized. It should be borne in mind that the

claimant in these proceedings is not seeking to enforce his Wisconsin judgment against any partnership assets in Michigan, or against the separate property of any of the copartners not served. The Wisconsin judgment was satisfied out of the funds impounded there. The only use made of such judgment in this proceeding is to establish the fact that claimant had, through suit, secured a valid lien on the fund in Wisconsin, out of which fund his judgment was paid. His claim filed in this suit is on entirely different matters arising out of construction work done by him as subcontractor of various contracts in Michigan. The Wisconsin statute which we have quoted, being section 2384, is substantially like our sections 10371-10374, 3 Comp. Laws. It has been held that where one of several copartners has been served with process, the copartnership property is liable. *Gunzberg* v. *Miller,* 39 Mich. 80; *Smith* v. *Runnells,* 94 Mich. 617 (54 N. W. 375).

Claimant was proceeding to impound the partnership funds in Wisconsin. There is no question that under the laws of that State, the Wisconsin court had jurisdiction to render the judgments against the fund which it did render, and, therefore, the receiver representing the partnership is in no better position than the partnership would be to contest the validity of such judgments. We think the judgment in that court is conclusive upon the parties to the action and their privies. *Mitchell* v. *Chambers,* 43 Mich. 150 (5 N. W. 57, 38 Am. Rep. 167) ; *Eureka Iron & Steel Works* v. *Bresnahan,* 66 Mich. 489 (33 N. W. 834) ; *Dunlap* v. *Byers,* 110 Mich. 109 (67 N. W. 1067) ; *Spiker* v. *Relief Society,* 140 Mich. 225 (103 N. W. 611, 104 N. W. 670).

6. We do not think that the comity rule is involved in this case. We have, in our opinion, said enough to dispose of the case.

We find no error in the order and decree of the lower court, and the same are affirmed, with costs to the claimant.

MCALVAY, C. J., and BROOKE, KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.